**STATE of Indiana, Appellant (Plaintiff below),**

v.

**Guy A. MOHLER, Appellee (Defendant below).**

**No. 87S01–9709–PC–497.**

Supreme Court of Indiana.

May 6, 1998.

---

Jeffrey A. Modisett, Attorney General, Anthony Scott Chinn, Deputy Attorney General, Indianapolis, for Appellant.

John Burley Scales, Boonville, for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

In *Bryant v. State,* 660 N.E.2d 290 (Ind. 1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996), we held that because Indiana's Controlled Substance Excise Tax is a punishment, the Double Jeopardy Clause bars a criminal prosecution for an underlying drug offense after that tax has been assessed. However, this new rule is not retroactive under *Daniels v. State,* 561 N.E.2d 487 (Ind.1990), and so does not entitle Guy A. Mohler to post-conviction relief.

### Background

In December, 1993, the State charged Guy A. Mohler ("Mohler") with possession of[1] and dealing in[2] more than thirty grams of marijuana, both class D felonies. Seven months earlier, in May, 1993, Mohler had received from the Indiana Department of Revenue a Record of Jeopardy Finding and Jeopardy Assessment Notice and Demand for payment of a Controlled Substance Excise Tax ("CSET")[3] in the amount of $48,-360.00.[4] The CSET and the criminal charges related to the same marijuana. Mohler pled guilty to both charges on August 18, 1995, and the trial court sentenced him on September 29, 1995.

Mohler did not appeal his convictions or sentence. In January, 1996, Mohler filed a petition for post-conviction relief based on this Court's holding in *Bryant v. State,* 660 N.E.2d 290 (because CSET is punishment, the Double Jeopardy Clause bars drug prosecution after tax has been assessed), which the trial court granted. The Court of Appeals affirmed the trial court's grant of post-conviction relief, and held that the rule announced in *Bryant* applied retroactively to Mohler and that the post-conviction court

1. Ind.Code § 35–48–4–11(1) (1988).

2. Ind.Code § 35–48–4–10(b)(1)(B) (1988 and Supp.1990).

3. Ind.Code §§ 6–7–3–1 to –17 (Supp.1992).

4. Marijuana is a Schedule I controlled substance, and is taxed at a rate of $40 per gram. Ind.Code §§ 35–48–2–4(d)(14) (1988) & 6–7–3–6 (Supp. 1992). The amount assessed Mohler is the total of the excise tax on 604.5 grams of marijuana, or $24,180.00, plus a one hundred percent penalty.

properly vacated Mohler's convictions for possessing and dealing in marijuana. *State v. Mohler*, 679 N.E.2d 170, 173 (Ind.Ct.App. 1997).

Upon the State's petition, this Court granted transfer on September 12, 1997. Ind.Appellate Rule 11(B)(3).

### Discussion

The State argues that under the principles of nonretroactivity this Court established in *Daniels*, our decision in *Bryant* "announced a new rule [of criminal procedure] that may not be applied retroactively to convictions and sentences that became final before *Bryant* was decided[.]" Br. of Appellant in Support of Petition to Transfer, p. 1.

### I

In *Bryant*, we held that the CSET constitutes a criminal punishment due to its punitive nature, and its assessment triggers double jeopardy protections. 660 N.E.2d at 295. Double jeopardy protects defendants against a second prosecution for the same offense following either an acquittal or a conviction, and against multiple punishments for the same offense. U.S. Const. amend. V; Ind. Const. art. I, § 14; *Bryant*, 660 N.E.2d at 295 (citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)).

The CSET is imposed upon the delivery, possession, or manufacture of a controlled substance. Ind.Code § 6–7–3–5 (Supp.1992). Although the CSET is denominated a civil penalty, we held that it was a punishment that creates a risk of determination of guilt upon which jeopardy attaches. *Bryant*, 660 N.E.2d at 297, 299 (deterrent purpose, high rate, and punitive nature make CSET more akin to criminal punishment). Therefore, we concluded that assessing a defendant with a CSET and subsequently prosecuting him or her with the underlying crime (relating to delivery, possession or manufacture of a controlled substance) violated double jeopardy. *Id.* at 300.

### II

 The issue before this Court today is whether the Court of Appeals erred in applying retroactively the holding of *Bryant* to Mohler and vacating his convictions for pos-

sessing and dealing in marijuana. The State invokes *Daniels v. State*, 561 N.E.2d 487, a case in which we enunciated the circumstances under which we would apply retroactively new rules of criminal procedure. The State argues under *Daniels* that the rule announced in *Bryant* does not apply retroactively to defendants whose convictions became final before the rule was announced.

### A

 In *Daniels*, this Court adopted as our state retroactivity rule the same retroactivity rule articulated by the U.S. Supreme Court in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and refined in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). *Daniels*, 561 N.E.2d at 489 ("we elect to follow the approach of *Teague* and *Penry* in addressing the retroactivity of new law to cases on review pursuant to petitions for post-conviction relief under Indiana procedure"). *Teague* established the retroactivity standard for federal courts reviewing habeas corpus petitions for relief from state judgments. State courts hearing claims for collateral review (such as Mohler's) are free to set their own retroactivity rules independent of *Teague*. *See generally* Mary C. Hutton, *Retroactivity in the States: The Impact of Teague v. Lane on State Post-conviction Remedies*, 44 Ala. L.Rev. 421 (1993) (compiling state approaches to retroactivity analysis following *Teague*). Indiana is one of a group of states that has acknowledged its independence in this regard but nevertheless has followed *Teague*; other states have chosen to reject *Teague*. *See* Benjamin P. Cooper, *Truth in Sentencing: The Prospective and Retroactive Application of Simmons v. South Carolina*, 63 U.Chi.L.Rev. 1573, 1388 n. 69 (1996) (collecting cases). In support of our decision to follow the *Teague* retroactivity analysis, we observed that the purposes for which Indiana affords the remedy of post-conviction relief are substantially similar to those for which the federal writ of habeas corpus is made available. *Daniels*, 561 N.E.2d at 489.

### B

 "In general, ... a case announces a new rule when it breaks new ground or

imposes a new obligation on the ... [g]overnment ... [or] if the result was not *dictated* by precedent existing at the time the defendant's conviction became final," *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070 (citations omitted and emphasis in original), or if the result is "susceptible to debate among reasonable minds," *Butler v. McKellar*, 494 U.S. 407, 415, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990). A conviction and sentence become final "for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994).

In *Teague*, a plurality of the Supreme Court held that new rules of law do not apply retroactively to cases on collateral review unless they fall within one of two very narrow exceptions. 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334. The first exception permits retroactive application of new rules that place " 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073 (quoting *Mackey v. United States*, 401 U.S. 667, 692, 91 S.Ct. 1171, 1179–80, 28 L.Ed.2d 388 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)). The Supreme Court has extended this exception to include "substantive categorical guarantees accorded by the Constitution," such as a rule prohibiting a particular punishment for a class of defendants due to their status or offense. *Penry*, 492 U.S. at 329–30, 109 S.Ct. at 2952–53.

The second exception provides for retroactive application of new rules that "require[ ] the observance of those procedures that ... are implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073 (citations and internal quotation marks omitted). The Supreme Court limited this exception to "watershed rules of criminal procedure" that implicate the fundamental fairness of criminal proceedings and are "central to an accurate determination of innocence or guilt." *Id.* at 311, 313, 109 S.Ct. at 1076, 1077.

◾ The principle *Daniels* extracted from *Teague*, therefore, is that new rules of criminal procedure do not apply retroactively to cases that became final before the new rule was announced, unless the new rule (a)(1) places certain "primary, private individual conduct beyond the power of the criminal law-making authority to proscribe;" or (a)(2) prohibits a particular punishment for a class of defendants based on their status or offense; or (b) is a "watershed rule[ ] of criminal procedure ... central to an accurate determination of innocence or guilt." *Penry*, 492 U.S. at 330, 109 S.Ct. at 2952–53; *Teague*, 489 U.S. at 307, 311, 313, 109 S.Ct. at 1073–74, 1075–76, 1076–77. Accordingly, to ascertain whether Mohler may benefit from the rule announced in *Bryant*, we must apply the three prong test derived from *Teague*. First, we must determine when Mohler's convictions and sentence became final. *Caspari*, 510 U.S. at 390, 114 S.Ct. at 953–54. Next, we must determine whether *Bryant* announced a new rule of criminal procedure or whether its result was dictated by precedent existing at the time Mohler's convictions and sentence became final. *Id.* Finally, if we determine that *Bryant* announced a new rule of criminal procedure, we must decide if the new rule falls within one of the two narrow exceptions to the general rule of nonretroactivity. *Id.*

## C

◾ The trial court entered final judgment on Mohler's convictions and sentence on September 29, 1995. Mohler did not file a praecipe for appeal within the thirty day period allotted under Ind.Appellate Rule 2(A). This Court issued its opinion in *Bryant* on December 27, 1995. Therefore, Mohler's convictions and sentence became final before *Bryant* was decided. *See Caspari*, 510 U.S. at 390, 114 S.Ct. at 953–54 (conviction and sentence are considered final for purposes of retroactivity review when timely direct appeal is not filed).

◾ *Bryant* announced a new rule of criminal procedure: Its result was not dictated by existing precedent and was subject to debate at the time Mohler's convictions and sentence became final. In deciding *Bryant*, this Court

relied heavily on the Supreme Court's decision in *Montana Dep't of Revenue v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). However, *Kurth Ranch* did not compel the result in *Bryant* because "[t]he CSET is not identical to the *Kurth* tax in every respect, [and] the factors outlined in *Kurth* do not create a bright line." *Bryant*, 660 N.E.2d at 297. Likewise, the result reached in *Bryant* was subject to debate at that time, as illustrated by the fact that some other states with controlled substance excise taxes did not find mere assessment of the tax to constitute jeopardy. *See, e.g., Desimone v. State*, 111 Nev. 1221, 904 P.2d 1 (1995) (dismissing criminal charges because controlled substance tax, although a punishment, had not been reduced to judgment or paid), *cert. granted by* 518 U.S. 1030, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (vacating judgment in light of *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996));[5] *People v. Litchfield*, 902 P.2d 921 (Colo.Ct. App.1995) (assessment of controlled substance tax is not jeopardy without final administrative determination of obligation to pay), *aff'd on other grounds and remanded* by 918 P.2d 1099 (Colo.1996).

### D

■ Because *Bryant* announced a new rule of criminal procedure after Mohler's convictions and sentence became final, its holding cannot be applied retroactively to Mohler's convictions unless it falls within an exception to the general rule of nonretroactivity.

---

**5.** In *Ursery*, the Supreme Court distinguished between *in rem* civil forfeitures and *in personam* civil punishments, such as fines, and held that the Double Jeopardy Clause does not apply to civil forfeitures because they are neither criminal nor punishment. *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

**6.** As to the "primary, private individual conduct" exception, the *Bryant* decision prohibits the State from both assessing an individual with a civil penalty based on the commission of a controlled substance-related crime and trying the same individual for the underlying crime, regardless of the order in which the two jeopardies attach. *Bryant v. State*, 660 N.E.2d 290 (Ind.1995), *cert.*

### D–1

■ *Daniels* recognized the two exceptions noted in *Teague* to the general rule of nonretroactivity: (1) rules which place certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe; and (2) rules which require the observance of procedures that are implicit in the concept of ordered liberty and without which the likelihood of an accurate conviction is seriously diminished. *Daniels*, 561 N.E.2d at 490 (citing *Teague*, 489 U.S. at 307, 313, 109 S.Ct. at 1073–74, 1076–77). Mohler does not contend that the *Bryant* rule falls under either of these exceptions and we hold that it does not.[6]

### D–2

■ *Daniels* also recognized that *Penry* expanded the first *Teague* exception set forth in subsection D–1 *supra* to permit retroactive application for new rules " 'prohibiting a certain category of punishment for a class of defendants because of their status or offense.' " *Daniels*, 561 N.E.2d at 490 (quoting *Penry*, 492 U.S. at 330, 109 S.Ct. at 2952–53). The Court of Appeals found that the *Bryant* rule was such a rule and so entitled to retroactive effect. We hold that the new rule announced in *Bryant* is not entitled to retroactive application under *Daniels*. To explain why, we look in some detail, first, at the *Penry* exception to the nonretroactivity rule and, second, at the analysis underlying the Court of Appeals's conclusion.

As noted several times *supra*, *Teague* held that a new rule will apply retroactively if it places "certain kinds of primary, private indi-

---

*denied,* ── U.S. ──, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996). *Bryant* does not place certain illicit behavior beyond the power of the State to proscribe. Prior to the decision in *Bryant*, the State could punish offenses relating to controlled substances, and it still can today. *See* Ind.Code §§ 35–48–4–1 to –14 (1988); to –15 (1993).

Nor does the second exception—"watershed rules of criminal procedure ... central to an accurate determination of innocence or guilt"—permit retroactive application of the rule in *Bryant*. While most assuredly an important constitutional right, double jeopardy protection is not central to an accurate determination of innocence or guilt. *United States v. Salerno*, 964 F.2d 172, 179 (2d Cir.1992).

vidual conduct beyond the power of the criminal law-making authority to proscribe." *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073. Notwithstanding that *Teague* focused solely on new rules according constitutional protection to an actor's primary conduct, *Teague* drew heavily from Justice Harlan's separate opinion in *Mackey v. United States*, 401 U.S. 667, 675, 91 S.Ct. 1171, 1171, 28 L.Ed.2d 388 (Harlan, J., concurring in judgments in part and dissenting in part). In *Mackey*, Justice Harlan spoke more generally of what the *Penry* court called "substantive categorical guarantees accorded by the Constitution, regardless of the procedures followed." *Penry*, 492 U.S. at 329, 109 S.Ct. at 2952. After *Mackey* had been decided, the Supreme Court prohibited imposing the death penalty on insane defendants, *Ford .v. Wainwright*, 477 U.S. 399, 410, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986), and for the crime of rape, *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d ·982 (1977) (plurality opinion). In *Penry*, the Court characterized *Ford* and *Coker* as holding that the Eighth Amendment, as a substantive matter, prohibited imposing the death penalty on a certain class of defendants because of their status (*Ford*—insanity) or because of the nature of their offense (*Coker*—rape). It concluded, "In our view, a new ̇rule placing certain classes of individuals beyond the State's power to punish by death is analogous to a new rule placing certain conduct beyond the State's power to punish at all." *Penry*, 492 U.S. at 330, 109 S.Ct. at 2953. For this reason, the Court held that the first *Teague* exception also covered "rules prohibiting a certain category of punishment for a class of defendants because of their status or of-

fense." [7] *Id.* We reaffirm our holding in *Daniels* that this exception also applies to the Indiana nonretroactivity rule. *Daniels*, 561 N.E.2d at 490.

As noted, the Court of Appeals concluded that the *Bryant* rule (holding that the Double Jeopardy Clause bars drug prosecution if a CSET with respect to the same drug has been assessed previously) applied retroactively under the *Penry* exception. As authority, the Court of Appeals looked to two federal decisions that also involved the Double Jeopardy Clause.[8] These decisions held that a new double jeopardy rule announced by the Supreme Court in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), *overruled by United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), was entitled to retroactive application under *Penry*.

Although these decisions concerned the specific rule enunciated in *Grady v. Corbin*, we think it is fair to say that they conclude (and that the Court of Appeals concluded in this case as well) that all new rules holding that the Double Jeopardy Clause bars a prosecution are entitled to retroactive effect.[9] These courts suggest two interrelated reasons for this. First, they observe that the purpose of the Double Jeopardy Clause is to "prevent an unconstitutional trial from taking place at all." *Mohler*, 679 N.E.2d at 173; *Johnson*, 963 F.2d at 345 (citing *Robinson v. Neil*, 409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973)); *McIntyre*, 938 F.2d at 904 (also citing *Robinson*). Because a rule concerning double jeopardy bars a prosecution, they continue, it is similar to the rule

---

**7.** Given this interpretation of the first *Teague* exception, the Court in *Penry* concluded that a new rule prohibiting the execution of mentally retarded defendants would fall under the first exception to the general rule of nonretroactivity and would apply to defendants on collateral review—assuming that the Court found, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons such as Penry regardless of the procedures followed. *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S.Ct. 2934, 2952–53, 106 L.Ed.2d 256 (1989). Addressing the merits, the Court found that, as a substantive matter, the Eighth Amendment did not prohibit categorically the execution of mentally retarded persons. *Id.* at 335, 109 S.Ct. at 2955–56.

**8.** *Johnson v. Howard*, 963 F.2d 342 (11th Cir. 1992); *McIntyre v. Trickey*, 938 F.2d 899 (8th Cir.1991), *vacated and remanded for reconsideration sub nom. Caspari v. McIntyre*, 510 U.S. 939, 114 S.Ct. 375, 126 L.Ed.2d 325, *opinion after remand McIntyre v. Caspari*, 35 F.3d 338 (8th Cir.1994), *cert. denied* 514 U.S. 1077, 115 S.Ct. 1724, 131 L.Ed.2d 582 (1995).

**9.** *See State v. Mohler*, 679 N.E.2d 170, 173 (Ind. Ct.App.1997) ("a rule that double jeopardy applies is equivalent to the rule considered in *Penry*"); *McIntyre*, 938 F.2d at 904 ("a rule concerning double jeopardy, such as the *Grady* rule, falls under the first *Teague* exception and must be accorded full retroactive effect").

considered in *Penry* which barred a punishment. *Mohler,* 679 N.E.2d at 173; *Johnson,* 963 F.2d at 345; *McIntyre,* 938 F.2d at 904. Because of this similarity, they conclude, the double jeopardy rule should be accorded the same retroactive effect. *Mohler,* 679 N.E.2d at 173; *Johnson,* 963 F.2d at 345; *McIntyre,* 938 F.2d at 904.

Second, they observe that the prohibition on double jeopardy is a "substantive categorical guarantee accorded by the Constitution." *Mohler,* 679 N.E.2d at 173 (citing *McIntyre,* 938 F.2d at 904, and *Johnson,* 963 F.2d at 345). As noted *supra, Penry* spoke approvingly of Justice Harlan's reference in *Mackey* to such guarantees. We infer that the *Johnson, McIntyre,* and *Mohler* courts view rules enforcing such guarantees as entitled to retroactive effect.

We do not find either of these reasons, either alone or together, as supporting the retroactive application of rules applying double jeopardy in general or the *Bryant* rule in particular. As to the first, *Penry* does not purport to give retroactive effect to all rules barring punishment but instead to rules barring a specific type of punishment for a specific class of defendants (defined by their status or offense). The double jeopardy rule may be analogous to the rule considered in *Penry* in the sense that both bar a certain type of government action (double jeopardy rule—prosecution; *Penry*—capital punishment). But we find the analogy is incomplete because the double jeopardy rule does not address itself to a specific class of defendants (defined by their status or offense) and, perhaps, inapt because it does not address itself to a specific punishment.[10]

Similarly, we reject the implication that any new rule enforcing a "categorical guarantee accorded by the Constitution" is entitled to retroactive effect under *Penry.*[11] To fall under *Penry,* such guarantees must be coupled with a specific type of punishment for a specific class of defendants (defined by their status or offense).

The Second Circuit sees this issue the same way we do:

> It seems to us that *Penry* effects a rather carefully limited expansion of the first "primary conduct" exception, and that *McIntyre* inappropriately puts *Grady* into the *Penry* category. The rule established in *Grady* does not immunize primary conduct from overall, or any specific, criminal punishment. Manifestly, the offenses for which [the defendants in this case] were convicted remain illegal after *Grady. Grady* would establish, at most, that their admittedly criminal conduct cannot be prosecuted in separate trials. This, we believe, is a procedural matter properly tested under the second, rather than first, exception to the prohibition against retroactive application of new rules.

*United States v. Salerno,* 964 F.2d 172, 178 (2d Cir.1992).

Turning to Mohler's specific claim, the Court of Appeals said that the *Bryant* rule falls under *Penry* and is entitled to retroactive effect because (1) the rule is equivalent to the rule considered in *Penry;* (2) the rule is a "substantive categorical guarantee accorded by the Constitution;" and (3) the rule "prohibits the prosecution of a specific class of defendants because of their status or offense, here, those persons who have previously been assessed a CSET for the same drug." *Mohler,* 679 N.E.2d at 173. On the grounds set forth *supra,* we reject reasons (1) and (2). To paraphrase the Second Circuit, the rule established in *Bryant*

---

**10.** *See Lambrix v. Singletary,* 520 U.S. 518, ——, 117 S.Ct. 1517, 1531, 137 L.Ed.2d 771 (1997) (quoting *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 1263–64, 108 L.Ed.2d 415 (1990)) (rule at issue not entitled to retroactive effect under *Penry* because it " 'neither decriminalize[s] a class of conduct nor prohibit[s] the imposition of *capital punishment* on a particular class of persons' " (emphasis supplied)); *Butler v. McKellar,* 494 U.S. 407, 415, 110 S.Ct. 1212, 1217–18, 108 L.Ed.2d 347 (1990) (rule at issue not entitled to retroactive effect under *Penry* because it did not address any categorical guarantees accorded by the Constitution such as a prohibition on the imposition of a *particular punishment* on a certain class of offenders).

**11.** Indeed, *Penry* could not possibly have meant this. *Penry* governs federal habeas corpus proceedings. The only claims reviewable in federal habeas are claims of violations of guarantees accorded by the Constitution. Allowing retroactive application of all new rules enforcing categorical guarantees accorded by the Constitution would not be an exception to the *Teague* bar; it would overrule it.

does not immunize primary conduct from overall, or any specific, criminal punishment. The offense for which Mohler was convicted remained illegal after *Bryant*. *Bryant* establishes, at most, that the State cannot prosecute Mohler's admittedly criminal conduct if it previously has assessed a CSET with respect thereto. *Cf. Salerno*, 964 F.2d at 178.

As to reason (3) given by the Court of Appeals, we conclude that that court has not defined a specific class of defendants by their status or offense as *Penry* requires (for example, insanity or mental retardation) but rather by the punishment they received (*i.e.*, "those persons who have previously been assessed as CSET for the same drug"). But if the specific class of defendants under *Penry* is defined as all those receiving the newly-proscribed punishment, then all those receiving the newly-proscribed punishment are entitled to the benefit of the new rule. This circular approach allows the exception to swallow the general rule, resulting in retroactive application of almost every new rule. Both finality and efficient administration of justice—the rationale for nonretroactivity—would be undermined if not destroyed.

While we continue to recognize the exception adopted in *Penry* as an exception to our *Daniels* nonretroactivity rule, we hold that neither new rules enforcing the Double Jeopardy Clause without more, nor the new rule enunciated in *Bryant* at issue here, fall within the *Penry* exception. Accordingly, Mohler is not entitled to the retroactive benefit of the *Bryant* rule.

## Conclusion

Pursuant to App.R. 11(B)(3), we vacate the opinion of the Court of Appeals and deny Mohler's petition for post-conviction relief.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.