**Anthony JACOBS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0305–PC–402.

Court of Appeals of Indiana.

Dec. 9, 2003.

Rehearing Denied Feb. 3, 2004.

---

Susan K. Carpenter, Public Defender of Indiana, Hope Fey, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Anthony Jacobs appeals the post-conviction court's denial of his petition for post-conviction relief. Although he raises several issues on appeal, we need only address the following issue: whether the post-conviction court erred in concluding that the rule in *Ross v. State*, 729 N.E.2d 113 (Ind.2000), which prohibits double enhancement of a misdemeanor handgun violation, does not apply retroactively to him. Because Jacobs has failed to prove that the rule in *Ross* · falls under one of the narrow exceptions to the general rule of nonretroactivity, we affirm the post-conviction court.

### Facts and Procedural History

The facts of this case, as presented by this Court on direct appeal, are as follows:

Indianapolis Police Department (IPD) Sergeant Dennis Riley was patrolling an area where approximately one hundred people had congregated after a local skating rink closed for the evening. He saw three males standing near a vehicle and ordered them not to leave. They jumped in the car and fled with Sergeant Riley in pursuit. When they could go no further in the vehicle, they exited the vehicle and ran across the parking lot. Sergeant Riley chased Jacobs who had been the driver of the vehicle. Sergeant Michael Fishburn of the Lawrence Police Department arrived on the scene in a marked police car and joined in the chase. He testified: "I activated my red lights and my siren in my police vehicle and caught up with Sergeant Riley and the subject he was pursuing." Jacobs was apprehended in a wooded area adjacent to the parking lot. A semi-automatic pistol and holster were recovered in a nearby bush. Because Sergeant Riley was due to go off-duty and Sergeant Fishburn was just coming on-duty, Sergeant Fishburn took responsibility for advising Jacobs of his rights and transporting the evidence to the IPD property room.

*Jacobs v. State*, No. 49A04–9801–CR–22, 708 N.E.2d 923 (Ind.Ct.App. Feb.4, 1999) (citation omitted).

The State subsequently charged Jacobs with Count I, Part 1: Carrying a Handgun Without a License as a Class A misdemeanor; Count I, Part 2: Carrying a Handgun Without a License as a Class C felony by virtue of a conviction for burglary in 1993; and Count II: Resisting Law Enforcement as a Class A misdemeanor. The State also alleged that Jacobs was a habitual offender for accumulating two pri-

or unrelated felony convictions for residential entry in 1991 and burglary in 1993. Following a September 1997 jury trial, the jury found Jacobs guilty of Count I, Part 1 and Count II. Jacobs then stipulated to the prior convictions that supported the felony handgun and habitual offender charges, and the trial court entered judgment of conviction for Carrying a Handgun Without a License as a Class C felony,[1] Resisting Law Enforcement as a Class A misdemeanor,[2] and being a habitual offender.[3] The trial court then sentenced Jacobs to one year for resisting law enforcement to be served concurrent to six years for carrying a handgun without a license, which was enhanced by six years for the habitual offender adjudication, for a total sentence of twelve years. In February 1999, this Court affirmed Jacobs' convictions on direct appeal.

In May 2001, Jacobs filed a petition for post-conviction relief, which he later withdrew. In March 2002, Jacobs filed another petition for post-conviction relief, which was amended in October 2002. Following a hearing in December 2002, the post-conviction court entered findings of fact and conclusions of law denying relief in March 2003. This appeal ensued.

### Discussion and Decision

 Jacobs appeals the denial of his petition for post-conviction relief. A defendant who has exhausted the direct appeal process may challenge the correctness of his convictions and sentence by filing a post-conviction petition. *Stevens v. State,* 770 N.E.2d 739, 745 (Ind.2002), *cert. denied,* —— U.S. ——, 124 S.Ct. 69, 157 L.Ed.2d 56 (2003). Post-conviction procedures do not provide an opportunity for a super-appeal. *Id.* at 746. Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Id.* Post-conviction proceedings are civil proceedings, and a defendant must establish his claims by a preponderance of the evidence. *Id.* at 745. We do not defer to the post-conviction court's legal conclusions, but we do accept its factual findings unless they are "clearly erroneous." *Id.* at 746.

Jacobs raises four issues on appeal, only one of which we need to address: whether the post-conviction court erred in concluding that the rule in *Ross,* which prohibits double enhancement of a misdemeanor handgun violation, does not apply retroactively to him. In *Ross,* the defendant was convicted of carrying a handgun without a license as a Class A misdemeanor, which was enhanced to a Class C felony by virtue of a previous felony conviction. The trial court also found that the defendant was a habitual offender and enhanced his sentence under the general habitual offender statute. On appeal, the defendant argued that it was improper for the trial court to impose the enhancement contained in the general habitual offender statute because his handgun conviction had already been enhanced once by the trial court from a Class A misdemeanor to a Class C felony. In addressing this issue, the Indiana Supreme Court held:

> In light of the statutory construction favoring more specific statutes as opposed to more general ones and because of the Rule of Lenity, a misdemeanor conviction under the handgun statute, once elevated to a felony due to a prior felony conviction, should not be enhanced again under the general habitual offender statute.

*Ross,* 729 N.E.2d at 117.

 The supreme court issued its opinion in *Ross* after Jacobs' direct appeal

---

**1.** Ind.Code § 35–47–2–1, –23(c)(2)(B).

**2.** Ind.Code § 35–44–3–3(a)(3).

**3.** Ind.Code § 35–50–2–8.

was decided. In order to avail himself of the benefits of the rule announced in *Ross*, Jacobs argues that it applies retroactively to him. In addressing the retroactivity of new law to cases on post-conviction review, the Indiana Supreme Court in *Daniels v. State*, 561 N.E.2d 487 (1990), elected to follow the approach of the United States Supreme Court in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). *Daniels*, 561 N.E.2d at 489. Specifically, that approach provides that a new rule of criminal procedure "is generally not applicable to those cases on collateral review, that is, those which have become final before the new rule was announced." *Id*. "In general, ... a case announces a new rule when it breaks new ground or imposes a new obligation on the ... [g]overnment ... [or] if the result was not *dictated* by precedent existing at the time the defendant's conviction became final, or if the result is susceptible to debate among reasonable minds."[4] *State v. Mohler*, 694 N.E.2d 1129, 1132–33 (Ind.1998) (citations and quotations omitted) (emphasis in original). "A conviction and sentence become final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.'" *Id*. at 1133 (quoting *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994)).

■ There are, however, two very narrow exceptions to the general rule of not applying new rules of criminal procedure to cases on post-conviction review. *Id*. The first exception permits retroactive application of new rules that place "'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe.'" *Id*. (quoting *Teague*, 489 U.S. at 307, 109 S.Ct. 1060). An example of such a rule is *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), where the United States Supreme Court held that a Virginia statute that banned interracial marriages violated the Fourteenth Amendment. *Williams v. United States*, 401 U.S. 667, 692 n. 7, 91 S.Ct. 1171, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring and dissenting). The United States Supreme Court has extended the first exception to include "'substantive categorical guarantees accorded by the Constitution,' such as a rule prohibiting a particular punishment for a

---

4. Jacobs does not disagree with the general principle that a new rule of criminal procedure does not apply to cases on post-conviction review. However, he argues that "the judicial construction of a statute does not announce a new rule of criminal procedure[.]" Appellant's Br. p. 11. In support, he relies in part on *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), where the defendant argued that his guilty plea was not knowing and intelligent. In concluding that *Teague* did not apply, the Supreme Court observed that there was nothing new about this principle of law, which was recognized as long ago as 1941. *Id*. at 620, 118 S.Ct. 1604. This is not the case here. Furthermore, in *Long v. State*, the defendant similarly argued that a rule in another case did not constitute a new rule of criminal procedure because it was merely an exercise of statutory construction. 645 N.E.2d 1111, 1113 n. 3 (Ind.Ct.App.1995). This Court responded that in *Daniels*, our supreme court stated that a case announces a new rule when it produces a result not dictated by precedent that existed at the time the defendant's conviction became final. At the time of Jacobs' stipulation and when his case became final, no appellate court had yet determined that the general habitual offender statute was inapplicable to a handgun conviction that was already enhanced from a Class A misdemeanor to a Class C felony. As explained below, *Ross* therefore announced a new rule in that regard. *See id*.

class of defendants due to their status or offense." *Mohler*, 694 N.E.2d at 1133 (quoting *Penry*, 492 U.S. at 329–30, 109 S.Ct. 2934). An example of this rule is *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), where the United States Supreme Court held that the Eight Amendment prohibits a state from imposing the death penalty against a defendant who is insane. *Penry*, 492 U.S. at 330, 109 S.Ct. 2934.

The second exception provides for retroactive application of new rules that " 'require[ ] the observance of those procedures that ... are implicit in the concept of ordered liberty.' " *Mohler*, 694 N.E.2d at 1133 (quoting *Teague*, 489 U.S. at 307, 109 S.Ct. 1060). The United States Supreme Court has limited this exception to " 'watershed rules of criminal procedure' that implicate the fundamental fairness of criminal proceedings and are 'central to an accurate determination of innocence or guilt.' " *Id.* (quoting *Teague*, 489 U.S. at 311, 313, 109 S.Ct. 1060). Although the precise contours of the second exception are difficult to discern, the most commonly cited illustration is the right to be represented by counsel in all criminal trials for serious offenses. *Daniels*, 561 N.E.2d at 490, 490 n. 4.

Therefore, in order to ascertain whether Jacobs may benefit from the rule announced in *Ross*, we must first determine when Jacobs' convictions and sentence became final. *See Mohler*, 694 N.E.2d at 1133. Next, we must determine whether *Ross* announced a new rule of criminal

procedure or whether its result was dictated by precedent existing at the time Jacobs' convictions and sentence became final. *See id.* Finally, if we determine that *Ross* announced a new rule of criminal procedure, we must decide if the new rule falls within one of the two narrow exceptions to the general rule of nonretroactivity. *See id.*

The court of appeals issued its memorandum decision in *Jacobs* on February 4, 1999. Because Jacobs did not seek rehearing or transfer, the opinion became final on March 24, 1999, when it was certified. It was not until May 25, 2000, that the supreme court issued its opinion in *Ross*. Therefore, Jacobs' convictions and sentence became final before *Ross* was decided. Furthermore, *Ross* announced a new rule of criminal procedure in that its result was not dictated by existing precedent. In fact, in deciding *Ross*, the supreme court overruled *Thomas v. State*, 684 N.E.2d 222 (Ind.Ct.App.1997). *Ross*, 729 N.E.2d at 117 n. 17. In *Thomas*, the court of appeals held that a Class A misdemeanor conviction for carrying a handgun without a license, which was enhanced to a Class C felony by virtue of a previous felony conviction, could also be enhanced under the general habitual offender statute.[5] 684 N.E.2d at 223–24. Because *Ross* announced a new rule of criminal procedure after Jacobs' convictions and sentence became final, we now decide if that rule falls within an exception to the general rule of nonretroactivity.

**5.** Jacobs stipulated to the prior convictions that supported the felony handgun and habitual offender charges on September 12, 1997. The Court of Appeals issued its decision in *Thomas* nearly a month earlier on August 15, 1997. Therefore, at the time of Jacobs' stipulation, the double enhancement was permitted. In fact, it was permitted until overruled by *Ross* in May 2000. As such, Jacobs' addi-

tional arguments on appeal that his stipulation was illusory because trial counsel did not inform him that a double enhancement was prohibited, that trial counsel was ineffective for failing to inform him at the time of his stipulation that a double enhancement was prohibited, and that appellate counsel was ineffective for failing to raise this issue on direct appeal are unavailing.

Because the rule in *Ross* neither places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe nor concerns substantive categorical guarantees accorded by the United States Constitution, the first exception does not apply in this case. We therefore proceed to address whether the second exception, which is limited to watershed rules of criminal procedure that implicate the fundamental fairness of criminal proceedings, applies in this case.

This Court addressed the applicability of the second exception under similar facts in *Long v. State,* 645 N.E.2d 1111 (Ind.Ct. App.1995). There, the defendant argued that our supreme court's opinion in *Stanek v. State,* 603 N.E.2d 152, 153–54 (Ind. 1992), *reh'g denied,* which provided that a conviction for a Class C felony under the statute covering habitual violators of traffic laws could not be enhanced again under the general habitual offender statute, applied retroactively to his case on post-conviction review. *Long,* 645 N.E.2d at 1113. We found that the rule announced in *Stanek* prohibiting double enhancement of certain traffic offenses "does not embody a principle so deeply rooted in the concept of ordered liberty as the right to legal representation at criminal trials for serious offenses." *Id.* at 1114. We therefore held that the rule in *Stanek* did not apply retroactively to the defendant. *Id.*

Likewise, here we find that the rule announced in *Ross,* which prohibits double enhancement of a misdemeanor handgun violation, does not embody a principle so deeply rooted in the concept of ordered liberty as the right to legal representation in criminal trials for serious offenses. Consequently, Jacobs cannot resort to the second exception. Because the rule in *Ross* does not fall within either exception to the general rule of nonretroactivity, the post-conviction court did not err in concluding that the rule in *Ross* did not apply retroactively to Jacobs.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.