ATTORNEYS FOR APPELLANT
Susan K. Carpenter
Public Defender of Indiana

Hope Fey
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

_____

No. 49S02-0510-PC-471

ANTHONY JACOBS,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

_____

Appeal from the Marion Superior Court, No. 49G01-9609-PC-150138
The Honorable Tanya Walton Pratt, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0305-PC-402

_____

**October 13, 2005**

**Shepard, Chief Justice.**

In 2000, this Court held that a misdemeanor handgun charge enhanced to a felony could not be further enhanced by use of the general habitual offender statute. Ross v. State, 729 N.E.2d 113, 116-17 (Ind. 2000). We now consider whether persons whose cases were resolved prior to that holding are entitled to its benefit retroactively in post-conviction proceedings. We conclude that they are.

1

**Facts and Procedural History**

In 1996, Anthony Jacobs led Indianapolis Police Department Sergeant Dennis Riley on a brief car chase followed by a foot pursuit. During the foot pursuit Jacobs threw away a semi-automatic pistol and a holster into a nearby wooded area, where police later recovered them.

The State initially charged Jacobs in two counts. In count one, it alleged carrying a handgun without a license, ordinarily a misdemeanor, and requested that the crime be elevated to a class C felony. Count two alleged resisting law enforcement. The State later charged Jacobs under the general habitual offender statute. Ind. Code § 35-50-2-8. In September 1997, a jury found Jacobs guilty of the misdemeanor handgun charge and resisting law enforcement. Jacobs then stipulated to prior convictions supporting the enhancement of the handgun charge to a felony and application of the habitual offender statute.[1]

The trial court then entered judgment for carrying a handgun as a felony, and resisting law enforcement, and found Jacobs a habitual offender. It sentenced Jacobs to six years on the felony handgun conviction, adding six years for the habitual finding. It ordered one year concurrent for resisting. The Court of Appeals affirmed on direct appeal. Jacobs v. State, No. 49A04-9801-CR-22 (Ind. Ct. App. Feb. 4, 1999). Jacobs did not seek transfer to this Court, or petition for certiorari.

On May 25, 2000, we announced the holding in Ross v. State, that the general habitual offender statute did not apply to add to a sentence for handgun possession already enhanced to a felony. 729 N.E.2d 113, 116-17 (Ind. 2000).[2] In May 2001, and again in March 2002, Jacobs filed petitions for post-conviction relief based in part on Ross.

The post-conviction court held a hearing in December 2002, and in March 2003 entered findings of fact and conclusions of law denying Jacobs relief. Jacobs appealed, alleging he was entitled to relief under Ross, that his trial and appellate lawyers were ineffective, and that his

---

[1] Jacobs was convicted of residential entry in 1991 and burglary in 1993. Jacobs v. State, 799 N.E.2d 1161, 1163-64 (Ind. Ct. App. 2003); (R. Proc. at 285.)

[2] Following our decision in Ross, the legislature took steps to codify that holding effective July 1, 2001. See, Ind. Code Ann. § 35-50-2-8 (West 2004); 2001 Ind. Acts. 1077-79.

stipulation was illusory and not voluntarily and intelligently made. The Court of Appeals affirmed the post-conviction court's ruling. Jacobs v. State, 799 N.E.2d 1161, 1167 (Ind. Ct. App. 2003). We grant transfer and hold that our decision in Ross applies retroactively to cases on post-conviction review.

## I. Retroactivity of Ross

In Daniels v. State, 561 N.E.2d 487, 489 (Ind. 1990) we adopted the retroactivity analysis found in Teague v. Lane, 489 U.S. 288 (1989), and Penry v. Lynaugh, 492 U.S. 302 (1989).[3] The general approach articulated in those cases is that "new rules of law do not apply retroactively to cases on collateral review unless they fall within one of two very narrow exceptions." State v. Mohler, 694 N.E.2d 1129, 1133 (Ind. 1998). Deciding whether a rule of constitutional criminal procedure will apply retroactively on collateral review entails a three-step process. Beard v. Banks, 542 U.S. 406, 124 S.Ct. 2504, 2510 (2004). The first step simply asks if the conviction of the individual seeking relief was final before the establishment of the new rule. Mohler, 694 N.E.2d at 1133. The second step is to "ascertain the 'legal landscape'" as it existed at the time of the conviction and determine if the rule was "new" or dictated by precedent. Beard, 542 U.S. at __,124 S.Ct. at 2510 (quoting Graham v. Collins, 506 U.S. 461, 468 (1993)).

Finally, if the rule is "new," a court must consider whether or not the rule fits within one of the two exceptions to the general principle of non-retroactivity. Id. The first exception includes those rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal-law making authority to proscribe," Teague, 489 U.S. at 307, and includes rules "prohibiting a certain category of punishment for a class of defendants because of their status or offense." Penry, 492 U.S. at 330.[4] The second exception includes those "'watershed rules of criminal procedure' that implicate the fundamental fairness of criminal proceedings and are 'central to an accurate determination of innocence or guilt. . . .'" Mohler, 694 N.E.2d at 1133

---

[3] Abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304 (2002).
[4] The Supreme Court has stated that while it has "sometimes referred to rules of this . . . type as falling under an exception to Teague's bar on retroactive application of procedural rules, they are more accurately characterized as substantive rules not subject to the bar." Schriro v. Summerlin, 542 U.S. 348, __, 124 S.Ct. 2519, 2522 n. 4 (2004)(internal citations omitted).

(quoting Teague, 489 U.S. at 311, 313). This exception is extremely narrow and applies "only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty." Beard, 542 U.S. at __, 124 S.Ct. at 2513 (quoting O'Dell v. Netherland, 521 U.S. 151, 157 (1997)).

Jacobs argues that Daniels and Teague should not apply to our decision in Ross because of the limited application of the analysis. (Pet. Transfer at 5.) He relies heavily on language in Bousley v. United States, 523 U.S. 614 (1998), indicating that Teague is "inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." (Pet. Transfer at 4 (quoting Bousley.)) Building from this statement, Jacobs asserts that Ross constituted a statutory interpretation of the relevant sections of the criminal code and therefore falls outside of the reach of the Teague analysis. In essence, Jacobs argues that because we engaged in statutory interpretation in Ross, the decision necessarily constitutes a change in substantive law that should be given retroactive effect without being subject to a Daniels analysis.

As Jacobs asserts, the U.S. Supreme Court has made clear that the Teague retroactivity analysis does not apply to all new legal pronouncements. In Bousley, the Court noted that "Teague by its terms applies only to procedural rules. . . ." 523 U.S. at 620. More recently, in the course of examining the distinction between substantive rules and procedural rules, the Court noted that while substantive rules generally apply retroactively to cases on collateral review, procedural rules generally do not apply retroactively. Schriro v. Summerlin, 542 U.S. 348, __, 124 S.Ct. 2519, 2532-33 (2004). Similarly, in Beard, the Court explained that Teague places a bar on retroactive application of procedural rules, whereas it does not place a bar on the retroactive application of changes in substantive law. 542 U.S. at __, 124 S.Ct. at 2510-14.

The foregoing precedent thus holds that Teague's retroactivity analysis applies only in those cases where 1) the conviction of the individual seeking relief is final, and 2) where the decision to be applied retroactively announced a new constitutional rule of procedure. Accordingly, before applying the Teague retroactivity analysis we must consider, as a threshold matter, whether our decision in Ross constituted a new procedural rule or a change in the substantive law.

4

What is a substantive law and what is procedural is a hardy perennial in legal discourse. As the Wisconsin Supreme Court has noted: "The substance-procedure distinction is an elusive notion often avoided by courts and legislatures because of the difficulty of its application." In re E.B., 330 N.W.2d 584, 591 (Wis. 1983). See also In re Shane B., 7 P.3d 94, 97 (Ariz. 2000)("A precise distinction between substantive and procedural rights or interests has proven elusive."). The Wisconsin court went on to note that the distinction is difficult to draw because the "words 'substance' and 'procedure' are in and of themselves somewhat ambiguous in the legal context. Furthermore, even once these words are defined, many legal concepts cannot easily be categorized as strictly substance or procedure." 330 N.W.2d at 591. In spite of this difficulty, some guidance exists regarding how to distinguish between substantive and procedural rules.

Procedural law is generally understood to control the means by which a court is to determine a defendant's guilt or innocence. As our Wisconsin colleagues said in State v. Lagundoye, 674 N.W.2d 526, 535 (Wis. 2004), "a statute in the criminal code that regulates the steps by which one who violates a [substantive] criminal statue is punished is, by definition, procedural." (alteration in original) (citations omitted).

This formulation resonates with the approach courts took in concluding that Ring v. Arizona, 536 U.S. 584 (2002), constitutes a procedural rule rather than a substantive one. In Schriro, for example, the Court concluded that Ring announced a procedural rule because it "altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules. . . ." 542 U.S. at __, 124 S.Ct. at 2523. This squarely places the focus of procedural rules on the mechanics of the process of criminal justice. See, e.g., State v. Towery, 64 P.3d 828, 833 (Ariz. 2003)("*Ring II* changed neither the underlying conduct that the state must prove to establish that a defendant's crime warrants death nor the state's burden of proof . . . . Instead, *Ring II* altered *who* decides whether any aggravating circumstances exist . . . ."); Jackson v. Carroll, No. 01-552-SLR, 2004 WL 1192650 at *18 (D. Del. May 20, 2004)("A procedural rule changes the way a case is adjudicated, not what the government must prove to establish a criminal offense."). Thus, a procedural rule should be understood as one that

5

"provides or regulates the steps by which one who violates a criminal statute is punished." In re E.B., 330 N.W.2d at 591 (quoting State v. Augustine, 416 P.2d 281, 283 (Kan. 1966)).

Substantive law, on the other hand, is broadly defined as the law that "declares what conduct is criminal and prescribes the punishment to be imposed for such conduct." Wayne R. LaFave Substantive Criminal Law §1.2 (2d ed. 2003). In federal habeas, a substantive rule is one that "alters the range of conduct or the class of persons that the law punishes." Schriro, 542 U.S. at __, 124 S.Ct. at 2523. This understanding of substantive rules in the habeas context suggests that substantive rules are those that address the criminal significance of the underlying prohibited conduct. The Wisconsin Supreme Court summarized the meaning of substantive rules in In re E.B. by saying that "*substantive law* is that which declares what acts are crimes and prescribes the punishment therefore." 330 N.W.2d at 591. See also, In re Shane B, 7 P.3d at 97 ("In the criminal context, substantive law 'either defines a crime or involves the length or type of punishment.'")(quoting Lamb v. Kansas Parole Bd., 812 P.2d 761, 764 (Kan. Ct. App. 1991)); State v. Sutherland, 804 P.2d. 970, 977 (Kan. 1991).

In Bousley, the Supreme Court explained the distinction between substantive and procedural rules in light of the principles underlying the decision in Teague. The Court noted that the foundation of Teague is the notion that:

> one of the principal functions of habeas corpus [is] to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted. Consequently, unless a new rule of criminal procedure is of such a nature that without [it] the likelihood of an accurate conviction is seriously diminished, there is no reason to apply the rule retroactively on habeas review. By contrast, decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal law-making authority to proscribe, necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal.

Bousely, 523 U.S. at 620 (alterations in original) (internal citations omitted). Considering that the underlying goal of Teague, as expressed in Bousley, is to ensure that an individual is not unjustly confined for actions that are not criminal, substantive laws are properly characterized as those rules that directly alter either the nature of the crime in question, or the ability of the

legislature to criminalize certain conduct. <u>See</u>, Bousley, 523 U.S. at 620-21; <u>Lagundoye</u>, 674 N.W.2d at 95-99; <u>In re E.B.</u>, 330 N.W.2d at 584.

We reached a similar conclusion in <u>Mohler v. State</u>, noting that <u>Teague</u> "focused solely on new rules according constitutional protection to an actor's primary conduct . . . [and through the expansion of <u>Teague</u> by <u>Penry</u>, includes both] substantive categorical guarantees accorded by the Constitution . . . [and] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." 694 N.E.2d at 1135 (internal citations omitted).

Considering these cases, it seems that in context of post-conviction relief, substantive rules should be considered those that either define criminal behavior itself, or define the penalties applicable to that behavior.

Although the question is a close one, we conclude that our decision in <u>Ross</u> falls more fittingly into the substantive category. <u>Ross</u> made clear that a material element of Indiana's general habitual offender statute, section 35-50-2-8 of the Indiana Code -- that an individual could be punished as a habitual offender only if convicted of a current felony and two prior unrelated felonies -- could not be satisfied if the current felony was a misdemeanor handgun offense already enhanced to felony status under section 35-47-2-23(c)(2)(B). <u>Ross</u>, 729 N.E.2d at 116-17. Although <u>Ross</u> did not make legal what was illegal, or vice versa, our statutory interpretation led us to the conclusion that the legislature did not intend to enhance the same handgun offense twice in the same proceeding. This seems like the sort of subject matter that substantive law concerns itself with: "what conduct is criminal and [what is] the punishment to be imposed for such conduct." 1 Wayne R. LaFave, <u>Substantive Criminal Law</u> §1.2 (2d ed. 2003).

Our decision today tracks the events that followed <u>McNally v. United States</u>, in which the Supreme Court considered whether the federal mail fraud statute could be used to punish individuals who used the mails for the purpose of defrauding others of intangible, non-economic rights.[5] In concluding that a long line of lower court decisions erred in using that theory to

---

[5] 483 U.S. 350, 352-56 (1987) <u>superceded by statute on other grounds</u>, Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690 §7603, <u>as recognized in</u> United States v. Berlin, 707 F.Supp. 832, 835 (E.D. Va. 1989).

convict individuals of mail fraud, the Supreme Court examined the provisions of the mail fraud statute and applied a standard analogous to the "rule of lenity" we applied in Ross. McNally, 483 U.S. at 358-60.[6] It decided that the language of the mail fraud statute clearly indicated that Congress had not intended to criminalize or punish mail fraud schemes that deprived persons of intangible, non-economic rights. Id.

As a result of the McNally decision, numerous prisoners whose convictions were final before the announcement of McNally sought habeas relief. Federal circuit and district courts generally treated the McNally decision as retroactive because it had effected a change in the *substantive* law by placing certain conduct beyond the reach of the mail fraud statute. See, e.g., United States v. Shelton, 848 F.2d 1485, 1489-90 (10th Cir. 1998); Ingber v. Enzor, 841 F.2d 450, 453-55 (2d Cir. 1988); Deborah Sprenger, Annotation, Effect upon Prior Convictions of McNally v. United States Rule that Mail Fraud Statute (18 USCS §1341) is Directed Soley at Deprivation of Property Rights, 97 A.L.R. FED. 797, 805-06 (1990).

Just as McNally concluded that the mail fraud statute could not be used to punish certain conduct, Ross concluded that the general habitual offender statute had not been intended to punish a particular form of criminal activity in a particular manner.

This holding is not in conflict with State v. Mohler. There, we determined that the decision in Bryant v. State, 660 N.E.2d 290, 300 (Ind. 1995), which held that the Double Jeopardy Clause bars a criminal prosecution for an underlying drug offense after the CSET tax is assessed, would not be applied retroactively. Mohler, 694 N.E.2d at 1137. We noted that "Bryant does not place certain illicit behavior beyond the power of the State to proscribe. . . . [And w]hile most assuredly an important constitutional right, double jeopardy protection is not central to an accurate determination of innocence or guilt." Id. at 1134 n.6. Because our decision in Bryant was based on the conclusion that the Double Jeopardy Clause barred prosecution, Bryant addressed a procedural matter, whether a trial could be brought at all, rather than a substantive matter, and was appropriately subjected to the Daniels - Teague analysis.

---

[6] As the Supreme Court stated the rule of lenity, "when there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." McNally, 483 U.S. at 359-60.

Ultimately, we see much similarity between cases like <u>McNally</u> and the rule established in <u>Ross</u>. In each case the rules announced affected the trial court's ability to apply criminal statutes by concluding that the legislative branch of the government had not intended to punish activity through a particular statute. Guided by the preceding cases and the principles underlying <u>Teague</u>, we hold that <u>Ross</u> announced a substantive rule and should be applied retroactively.[7]

## II. Jacobs' Other Grounds for Appeal

The post-conviction court denied relief on several other claims raised by Jacobs, and the Court of Appeals properly rejected his contentions on those points. We summarily affirm their disposition of these issues. Ind. Appellate Rule 58(A).

## Conclusion

We direct the post-conviction court to vacate Jacobs' conviction under the habitual offender statute, but otherwise affirm.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.

---

[7] We do not deem this conclusion as detracting at all from the framework under which retroactivity of legislative changes in criminal sentences are analyzed when a case is not yet final. In other words, we reaffirm our commitment to the general rule that "courts must sentence defendants under the statute in effect at the time the defendant committed the offense." <u>Payne v. State</u>, 688 N.E.2d 164, 165 (Ind. 1997). The narrow exception to this general rule applies when the legislature passes an act ameliorating the sentence for a specific crime. Only in such cases, and only when the legislature also fails to include a specific savings clause, will the ameliorative act benefit all individuals sentenced after the statute's effective date. <u>Id.</u>