**Terry LEATHERWOOD, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 32A05–0710–PC–573.

Court of Appeals of Indiana.

Feb. 7, 2008.

Rehearing Denied April 23, 2008.

Susan K. Carpenter, Public Defender of Indiana, Jonathan O. Chenoweth, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Petitioner Terry Leatherwood appeals from the denial of his peti- tion for post-conviction relief ("PCR"). Leatherwood contends that the post-conviction court erred in refusing to apply the holding of *Fajardo v. State*, 859 N.E.2d 1201 (Ind.2007), that an amendment of substance to a charging information will be allowed no later than thirty days prior to the omnibus date. In this case of first impression, we affirm.

## FACTS

The facts underlying Leatherwood's convictions were found by this court in his direct appeal:

> The evidence most favorable to the convictions reveals that Leatherwood had an ongoing sexual relationship with his daughter, D.M., who was thirteen years old in October 2001. On October 22, 2001, the State charged Leatherwood with one count of child molesting, alleging that Leatherwood had intercourse with D.M. "on or about October 2001," another count of child molesting alleging that he performed deviate sexual conduct with D.M. "on or about October 2001," and one count of incest occurring "on or about October 2001." The omnibus date was set for December 21, 2001, which was later reset to January 18, 2002, on Leatherwood's motion. After some continuances, a trial date of June 10, 2002, was set.
>
> On May 15, 2002, the State attempted to amend the information by filing additional counts four through nine, which alleged child molesting via intercourse "on or between September–October 19, 2001," child molesting via intercourse "on or between June 1999–September 2001," child molesting via intercourse "on or between June 1999–September 2001," child molesting via deviate sexual conduct "on or between June 1999–September 2001," child molesting via sexual

intercourse "on or between March 1998–June 1999," and child molesting via deviate sexual conduct "on or between March 1998–June 1999." Pursuant to Leatherwood's motion, the trial court dismissed these new counts on May 17, 2002. On May 20, 2002, the State amended the original three counts to specify that the alleged events occurred "On or between October 19–20, 2001." It also petitioned the trial court to reconsider its dismissal of counts four through seven. The trial court allowed the State to file an amended count four alleging child molesting via intercourse "on or between September 2001–October 18, 2001," count five alleging child molesting via intercourse "on or between June 1999–September 2001," and count seven (later renumbered count six) alleging child molesting via deviate sexual conduct "on or between June 1999–September 2001."

Following these amendments, the jury trial was rescheduled for July 8, 2002. Leatherwood later moved for a continuance, resulting in a final trial date of September 21, 2002. At trial, D.M. testified as to her sexual relationship with Leatherwood, including that he regularly had sexual intercourse with her and would frequently ejaculate in her mouth, but never in her vagina. When asked to describe the specific incident that occurred on the night of October 19–20, 2001, as alleged in counts one through three, D.M. testified that Leatherwood had sexual intercourse with her, but was "not completely sure" whether they engaged in oral sex that night. The State also introduced Leatherwood's videotaped confession to police into evidence. In the tape, Leatherwood admits to having been in a sexual relationship with his daughter over the past one or two years. He also specifically confesses to having had intercourse with D.M. on the night

of October 19–20, 2001, to performing oral sex on D.M. that night, and to ejaculating in her mouth "the way it normally was." ... The jury found Leatherwood guilty of all counts.

Appellant's App. pp. 72–74. The trial court sentenced Leatherwood to an aggregate sentence of 120 years of incarceration.

On June 5, 2003, on direct appeal, this court concluded, *inter alia*, that allowing the State to file amended charges four through six approximately four months after the omnibus date, even though contrary to the provisions of Indiana Code section 35–34–1–5(b), did not prejudice Leatherwood and was therefore proper. On February 23, 2004, Leatherwood filed a PCR petition. On January 16, 2007, the Indiana Supreme Court issued *Fajardo*, 859 N.E.2d at 1201, in which it concluded that amendments of substance to a charging information could not be made after thirty days prior to the omnibus date, regardless of a lack of prejudice. *Id.* at 1208; Ind.Code § 35–34–1–5(b) (2006). On May 18, 2007, Leatherwood amended his PCR petition to include his claim that the trial court erred in allowing the untimely amendment to his charging information. On August 20, 2007, the post-conviction court denied Leatherwood's PCR petition.

## DISCUSSION AND DECISION

Our standard for reviewing the denial of a PCR petition is well-settled:

In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistak-

ably to a conclusion opposite to that reached by the post-conviction court. . . . Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468–69 (Ind. 2006) (internal citations and quotation marks omitted).

 Leatherwood argues that this court should revisit its earlier decision regarding the amended charges in light of *Fajardo*, which all agree would entitle him to relief were we to apply it. The State counters that our earlier decision on this question is now the "law of the case" and that we should not revisit it.

The law of the case doctrine mandates that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and relevantly similar facts. The doctrine's admittedly important purpose is to minimize unnecessary relitigation of the legal issues once they have been resolved by an appellate court.

With due respect for the doctrine of *res judicata* this Court has always maintained the option of reconsidering earlier cases in order to correct error. A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work manifest injustice. Finality and fairness are both important goals. When faced with an apparent conflict between them, this Court unhesitatingly chooses the latter.

*State v. Huffman*, 643 N.E.2d 899, 901 (Ind.1994) (citations and quotation marks omitted). Essentially, Leatherwood contends that fairness requires that we revisit our determination and that application of *Fajardo* to collateral review is retroactive in any event because that case did not announce a "new rule" of constitutional procedure.

### A. Revisiting our Earlier Ruling

 Based on the language above in *Huffman*, we may only revisit earlier determinations to "correct error" or in "extraordinary circumstances such as where the initial decision was *clearly erroneous* and would work manifest injustice." 643 N.E.2d at 901 (emphasis added). In other words, we may revisit an issue when the first decision we made was wrong. This court's ruling in Leatherwood's direct appeal, however, was in full accord with Indiana case law at the time. *See, e.g., Wright v. State*, 593 N.E.2d 1192, 1197 (Ind.1992); *Kindred v. State*, 540 N.E.2d 1161, 1170 (Ind.1989); *Haymaker v. State*, 528 N.E.2d 83, 86 (Ind.1988); *Hegg v. State*, 514 N.E.2d 1061, 1063 (Ind.1987); *Laughner v. State*, 769 N.E.2d 1147, 1158 (Ind.Ct.App.2002), *trans. denied; Townsend v. State*, 753 N.E.2d 88, 95 (Ind.Ct. App.2001); *Tripp v. State*, 729 N.E.2d 1061, 1064–65 (Ind.Ct.App.2000); *Todd v. State*, 566 N.E.2d 67, 69 (Ind.Ct.App.1991); *State v. Gullion*, 546 N.E.2d 121, 122–23 (Ind.Ct.App.1989). This court's earlier ruling on the issue was only "erroneous" in light of jurisprudence that did not yet exist (and would not for approximately three and one-half years) and, therefore, based on established precedent at that time, was not actually erroneous at all. We decline to revisit this court's earlier ruling on this issue on the basis that it was clearly erroneous.

### B. Retroactive Application of *Fajardo*

 Even though we decline Leatherwood's invitation to revisit our earlier

determination on the grounds that it was clearly erroneous, he would nevertheless be entitled to relief were we to determine that *Fajardo* should be applied retroactively on collateral review. The Indiana Supreme Court has adopted the retroactivity analysis found in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

> The general approach articulated in those cases is that "new rules of law do not apply retroactively to cases on collateral review unless they fall within one of two very narrow exceptions." *State v. Mohler,* 694 N.E.2d 1129, 1133 (Ind. 1998). Deciding whether a rule of constitutional criminal procedure will apply retroactively on collateral review entails a three-step process. *Beard v. Banks,* 542 U.S. 406, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004). The first step simply asks if the conviction of the individual seeking relief was final before the establishment of the new rule. *Mohler,* 694 N.E.2d at 1133. The second step is to "ascertain the 'legal landscape'" as it existed at the time of the conviction and determine if the rule was "new" or dictated by precedent. *Beard,* 542 U.S. at 410, 124 S.Ct. at 2510 (quoting *Graham v. Collins,* 506 U.S. 461, 468, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993)).
>
> Finally, if the rule is "new," a court must consider whether or not the rule fits within one of the two exceptions to the general principle of non-retroactivity. The first exception includes those rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal-law making

authority to proscribe," *Teague,* 489 U.S. at 307, 109 S.Ct. 1060, and includes rules "prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Penry,* 492 U.S. at 330, 109 S.Ct. 2934. The second exception includes those " 'watershed rules of criminal procedure' that implicate the fundamental fairness of criminal proceedings and are 'central to an accurate determination of innocence or guilt....'" *Mohler,* 694 N.E.2d at 1133 (quoting *Teague,* 489 U.S. at 311, 313, 109 S.Ct. 1060). This exception is extremely narrow and applies "only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty." *Beard,* 542 U.S. at 416, 124 S.Ct. at 2513 (quoting *O'Dell v. Netherland,* 521 U.S. 151, 157, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997)).

*Jacobs v. State,* 835 N.E.2d 485, 487–88 (Ind.2005) (footnote omitted).

 We need not apply the *Teague* analysis to the rule announced in *Fajardo,* however, because it fails to satisfy an even more fundamental requirement of that case and its progeny, namely, that the rule be "a rule of *constitutional* criminal procedure[.]" *Id.* (citing *Beard,* 542 U.S. at 410, 124 S.Ct. 2504) (emphasis added). The body of United States Supreme Court jurisprudence clarifies that a rule must be constitutionally based before it may be considered for retroactive application on collateral review under *Teague.* *See, e.g., Saffle v. Parks,* 494 U.S. 484, 488, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) ("Foremost among [the underlying purposes of the *habeas corpus* writ [1]] is ensuring that

---

1. Federal *habeas corpus* proceedings are similar to Indiana's post-conviction procedures in that both allow collateral attacks on criminal convictions. In adopting the *Teague* retroactivity analysis for application to our state post-conviction procedures, the Indiana Supreme Court noted that "the purposes for which this Court affords the remedy of post-conviction relief are substantially similar to those for which the federal writ of habeas

state courts conduct criminal proceedings *in accordance with the Constitution* as interpreted at the time of the proceedings.") (citing *Butler v. McKellar*, 494 U.S. 407, 412–14, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990)) (emphasis added); *O'Dell v. Netherland*, 521 U.S. 151, 156, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (in explaining second step of *Teague* analysis, clarifying that question is whether state court considering defendant's claim "at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks *was required by the Constitution.*") (citation omitted; emphasis added).

The rule announced in *Fajardo* was based solely on the language of Indiana Code section 35–34–1–5(b) and was not compelled by any Indiana or federal constitutional provision. Indeed, *Fajardo* does not mention any constitutional provisions, much less rely on one. Consequently, whether the rule in *Fajardo* is "new" is irrelevant because the *Teague* retroactivity analysis simply does not apply. The only question left to us, then, is whether *Fajardo* will be retroactively applied to collateral review outside the *Teague* framework.

To discover the answer, we look, oddly enough, to *Teague* for guidance. As previously mentioned, even when concerned with constitutional and not mere statutory

rules, "*Teague* places a bar on retroactive application of procedural rules[.]" *Jacobs*, 835 N.E.2d at 488. This bar is lifted for only two exceptions, one of which is when the rule at issue is a "watershed rule[ ] of criminal procedure that implicate[s] the fundamental fairness of criminal proceedings and [is] central to an accurate determination of innocence or guilt[.]" [2] *Jacobs*, 835 N.E.2d at 488. In other words, the *Teague* framework stands for the proposition that the more compelling the constitutional interest, the more likely that a rule embodying it will be applied retroactively. With this in mind, and in light of the fact that even most *constitutional* rules are not given retroactive effect, it follows that those not rooted in any constitutional provision, like the rule announced in *Fajardo*, should not be given retroactive effect either. *See State v. Johnson*, 166 N.J. 523, 766 A.2d 1126, 1140 (2001) ("[W]e emphasize that our decision today rests on a theory of statutory interpretation, not on principles of constitutional law. Consequently, prospective application will not, under this ruling, deprive ... inmates of any constitutional right established in a holding of this Court or the United States Supreme Court."). The post-conviction court properly declined Leatherwood's invitation to apply *Fajardo* retroactively to Leatherwood's convictions.[3]

corpus is made available[.]" *Daniels v. State*, 561 N.E.2d 487, 489 (Ind.1990). We see no reason to depart from Indiana's general policy of tracking federal jurisprudence in this area.

2. As previously mentioned, the other exception to the bar, which is not relevant to our analysis of this issue,

includes those rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal-law making authority to proscribe," *Teague*, 489 U.S. at 307, 109 S.Ct. 1060, and includes rules "prohibiting a certain category of

punishment for a class of defendants because of their status or offense." *Penry*, 492 U.S. at 330, 109 S.Ct. 2934. *Jacobs*, 835 N.E.2d at 487–88.

3. Nothing in this opinion should be understood to suggest that Leatherwood would not be entitled to relief had he actually been prejudiced by the amendment to his charging information and yet been denied relief on direct appeal. Leatherwood would be entitled to that relief, however, not because of any retroactive application of *Fajardo*, but because the decision on direct appeal would have been clearly erroneous in light of established precedent at that time.

322

The judgment of the post-conviction court is affirmed.

BAKER, C.J., and DARDEN, J., concur.