



FILED

Jan 09 2019, 1:01 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 19S-JV-12

## J.W.,
*Appellant (Defendant),*

–v–

## State of Indiana,
*Appellee (Plaintiff).*

Argued: April 20, 2018 | Decided: January 9, 2019

Appeal from the Henry County Circuit Court 1
Cause No. 33C01-1707-JD-38
The Honorable Bob A. Witham, Judge
On Petition to Transfer from the Indiana Court of Appeals
No. 33A04-1708-JV-1934

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices David, Massa, and Goff concur.

**Slaughter, Justice.**

We held in *Tumulty v. State*, 666 N.E.2d 394 (Ind. 1996), that an adult criminal defendant cannot challenge the validity of his guilty plea on direct appeal. He must, instead, pursue post-conviction relief and raise in that proceeding any claims of error concerning his plea.

At issue here is whether to extend *Tumulty* to the juvenile-law counterpart to a criminal plea—namely, an agreed delinquency adjudication. We hold that juveniles cannot immediately challenge on direct appeal any errors concerning their agreed adjudication. But because juveniles are not eligible for post-conviction relief, before pursuing their constitutional right to appeal, they must first assert any claims of error concerning their agreed judgment in a request for post-judgment relief filed with the juvenile court. Juveniles who seek that relief in post-judgment proceedings have a statutory right to counsel under Indiana Code article 31-32.

# Factual and Procedural History

J.W., a juvenile, has a significant history with the juvenile-justice system dating to his early teens. In 2013, J.W. was adjudicated a delinquent at age 13 for committing criminal mischief, a class B felony if committed by an adult. While on probation, he assaulted a student at school and possessed weapons on several occasions. He was placed in foster care but then was relocated to secure detention because he stole from his foster family, ingested rubbing alcohol to become intoxicated, and possessed a handgun. Undeterred, he continued with various criminal behaviors until his probation was terminated in 2015 and he was placed with the Department of Correction. In 2017, he was released from the Department and reportedly moved back into his parents' home. But just a week later, he fled and was reported as a runaway.

In July 2017, the New Castle Police Department responded to a 911 call that a young man was threatening suicide. When police arrived, J.W. was running through a mobile-home park and heeded the officer's command to surrender. After he was detained, J.W. identified himself to police as his

older brother M.W. and stated falsely that his birthdate was October 4, 1998, which would have made him 18 years old. The responding officer also spoke with J.W.'s girlfriend, who had called 911. She explained that J.W. became upset after she asked him to leave. He started punching himself in the face and chin, grabbed a kitchen knife, put it to his throat, and threatened suicide. Because of J.W.'s self-inflicted injuries and his suicide threat, the officer called for paramedics to administer treatment and to transport J.W. to the local hospital emergency room.

After J.W. was admitted to the hospital under the name of M.W., hospital staff received a phone call from a person identifying herself as J.W.'s sister. The nurses on duty told the caller they had no patient by that name, but later learned that J.W. was a juvenile and had provided the wrong name. Once medical staff learned that J.W. was not his 18-year old brother, they contacted J.W.'s parents to obtain consent to treat him. The parents consented and spoke with the officer when they got to the hospital. Upon learning of J.W.'s real age and identity, the officer contacted a Henry County probation officer who had previously encountered J.W. in the juvenile system. The police officer also arrested J.W. as a juvenile runaway and for false informing.

Both the police and probation officers testified at J.W.'s detention hearing in July 2017. The probation officer recommended that J.W. remain in secure detention, based on his failure to benefit from less restrictive services. The court adopted the recommendation and continued J.W.'s placement in secure detention. The following day, the court issued an order finding probable cause that J.W. was delinquent and that detention was "essential to protect the child or the community".

In August 2017, the court held an initial hearing that J.W., his counsel, and his mother attended. Counsel advised that the State and J.W. had agreed to settle the case and represented that J.W. would admit to Count 1, class B misdemeanor false informing if committed by an adult, Ind. Code §§ 35-44.l-2-3(d)(1), 31-37-1-2, in exchange for the State's dismissing Count 2, leaving home without the permission of a parent, guardian, or custodian, *id*. §§ 31-37-1-2, 31-37-2-2. Counsel also advised that J.W. would

waive a pre-dispositional report and would accept placement in the Department of Correction.

During his colloquy with the court, J.W. admitted to providing a false name and birthdate at the hospital. The trial court accepted J.W.'s admission as made freely and voluntarily, found a factual basis for accepting the admission on Count 1, and the State, consistent with the parties' agreement, moved to dismiss Count 2. Because J.W. waived a pre-dispositional report, the court proceeded to disposition and ordered J.W. committed to the Department.

Despite the parties' consent judgment, entered in accordance with their settlement, J.W. appealed, arguing that his agreed delinquency judgment should be set aside for four reasons. **First**, he said, the court did not provide him with the statutory advisement of rights required by Indiana Code section 31-37-12-5; did not determine whether he had knowingly and voluntarily waived his rights; and did not provide him and his parents with the required opportunity to be heard during the proceedings. **Second**, the facts he admitted to during his colloquy do not constitute an offense. **Third**, the trial court abused its discretion in committing him to the Department of Correction without determining that he knowingly and intentionally entered into the agreed judgment and without providing him with an opportunity to be heard. **Fourth**, his counsel was ineffective for all the reasons outlined in the first three arguments.

Following its own precedent, the court of appeals dismissed J.W.'s appeal, concluding that "the appropriate remedy for relief that a juvenile defendant must seek is through the filing of a Trial Rule 60 motion". *J.W. v. State*, No. 33A04-1708-JV-1934, 2017 WL 6273184, at *3 (Ind. Ct. App. Dec. 11, 2017) (quoting favorably from *J.H. v. State*, 809 N.E.2d 456, 458 (Ind. Ct. App. 2004), trans. denied). And the court remanded the case to the trial court to allow J.W. to file a motion for relief from the judgment adjudicating him a delinquent.

# Standard of Review

The procedural path a party must pursue to obtain appellate review is a legal question we review de novo.

# Discussion and Decision

**Trial Rule 60(B) respects the presumptive finality of a juvenile's agreed delinquency judgment while providing an efficient mechanism for an aggrieved party to vindicate claims that his adverse judgment was obtained unlawfully.**

### A. Our legal system respects litigants' ability to settle cases and supports the finality of agreed judgments.

Indiana's judicial policy strongly favors agreements to settle litigation disputes. *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003). Our judicial system counts on such settlements to occur in the lion's share of both civil and criminal cases. Otherwise, with more than a million cases filed in our trial courts each year, the system would grind to a halt.

For example, parties to civil suits may enter a consent judgment, thus contractually settling a dispute over any matter that may be the subject of litigation. *State v. Huebner*, 230 Ind. 461, 467, 104 N.E.2d 385, 387 (1952). After a court enters an agreed civil judgment, it cannot modify the judgment. *Ryan v. Ryan*, 972 N.E.2d 359, 362 (Ind. 2012). Once entered by a trial court, a consent judgment has the same "dignity" and "conclusiveness" as an "adjudication between the parties". *Huebner*, 230 Ind. at 468, 104 N.E.2d at 388. And if a party fails to perform its obligations under a consent judgment, the aggrieved party may obtain a decree enforcing the judgment from the court that approved it. *Fackler v. Powell*, 839 N.E.2d 165, 167 (Ind. 2005) (explaining that absent parties' contrary agreement, court accepting divorce property settlement as part of

dissolution decree retains jurisdiction to interpret and enforce settlement's terms).

In criminal cases, the same principles apply to encourage parties to enter into—and for courts to enforce violations of—plea agreements. A plea agreement is a contract, and its terms are binding on the defendant, the State, and the trial court. *Pannarale v. State*, 638 N.E.2d 1247, 1248 (Ind. 1994). See also I.C. § 35-35-3-3(e). Choices have consequences. And as we held in *Tumulty*, one consequence of a defendant's choice to plead guilty and allow judgment to be entered against him is that he is foreclosed from challenging his conviction on direct appeal.

> [A criminal] plea as a legal act brings to a close the dispute between the parties, much as settling civil parties do by submitting an agreed judgment. To permit appeal by settling parties would, of course, make settlements difficult to achieve in any litigation.

*Tumulty*, 666 N.E.2d at 396.

What we have said about agreed dispositions in the civil and criminal sphere is no less true of such dispositions in juvenile cases—which are, after all, civil proceedings. *Bible v. State*, 253 Ind. 373, 381, 254 N.E.2d 319, 322 (1970). The same concerns of finality and freedom of the parties to settle their disputes counsel in favor of encouraging and enforcing juvenile agreements, too—including the delinquency agreement at issue here. As with other consent judgments, an agreed delinquency judgment limits the juvenile's ability to challenge the agreed judgment on direct appeal. As discussed next, the juvenile must instead pursue another avenue for obtaining relief—one that begins in the trial court.

## B. Challenges to settlement agreements and agreed judgments often require additional proceedings before a trial court.

We encourage settlements for all the reasons stated. But if an agreement is legally problematic, the aggrieved party will have recourse to challenge its validity and enforceability. The issue is not whether legal recourse exists but what procedure the litigant must pursue to obtain relief.

Grounds for challenging consent judgments, as with any contract, include coercion, duress, undue influence, misrepresentation, fraud, and lack of consent. See, e.g., *Indianapolis, D. & W. Ry. Co. v. Sands*, 133 Ind. 433, 435, 32 N.E. 722, 724 (1892). After a trial court has entered a consent judgment, "no party to such agreement can or ought to be permitted to have the decree modified or changed without showing some fraud or mistake by which he was induced to enter into the agreement … or without showing some valid reason why he should be released from it." *Id.*

Challenging a consent judgment often requires the aggrieved party to develop a factual record that he did not enter into the agreement freely and with informed consent. For example, we have long held that whether a contracting party was defrauded is a question of fact for the trial court. *Prop. Owners, Inc. v. City of Anderson*, 231 Ind. 78, 89, 107 N.E.2d 3, 8 (1952). Similarly, when a party claims he executed a contract under duress, "the ultimate fact to be determined is whether or not the purported victim was deprived of the free exercise of his own will." *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 283 (Ind. 1983) (original emphasis omitted). Thus, once a trial court enters a consent judgment, the party attacking it must typically initiate further proceedings in the trial court to establish a factual basis for its alleged invalidity.

Indiana's post-conviction rules also require a separate, collateral proceeding at which a trial court hears evidence, finds facts, and issues legal conclusions. *Tumulty*, 666 N.E.2d at 396 (citing Ind. Post-Conviction Rule 1); *Crain v. State*, 261 Ind. 272, 273, 301 N.E.2d 751, 751-52 (1973). After conducting the hearing, the trial court must "make specific findings

of facts[] and conclusions of law on all issues presented" in the post-conviction petition. P-C. R. 1(6). See generally *Bethea v. State*, 983 N.E.2d 1134, 1138 (Ind. 2013).

Thus, in both the civil and criminal contexts, challenging an agreed judgment generally requires a trial court to conduct additional fact-finding in connection with the formation of the parties' agreement. And that is no less true of challenges to agreed judgments in juvenile cases.

## C. Trial Rule 60(B) provides a fitting procedural mechanism for juveniles to challenge the validity of an agreed adverse judgment.

As mentioned, juveniles must have a suitable procedural vehicle for challenging an allegedly unlawful adjudication agreement, and that includes developing an adequate factual record to support their claims. Post-conviction proceedings will not suffice because they apply only to adult criminal convictions. *Jordan v. State*, 512 N.E.2d 407, 408 (1987). We hold that Trial Rule 60 is an appropriate avenue through which a juvenile must raise any and all claims premised on the illegality of an agreed delinquency adjudication. Under Rule 60, "the court shall hear any pertinent evidence, allow new parties to be served with summons, allow discovery, [and] grant relief". Ind. Trial Rule 60(D). And after the trial court has ruled, a party aggrieved by the post-judgment ruling can then appeal. T.R. 60(C).

J.W. responds that he does not need a post-judgment forum for developing a further factual record. He says the existing trial-court record is enough to establish his entitlement to relief on two of his claims—that his trial counsel was ineffective, and that the trial court's disposition order was an abuse of discretion. We express no opinion on the merits of any of J.W.'s claims, including the two claims he says are ripe for appellate disposition.

That is because the rule we announce today is a bright-line rule. A juvenile's claim that his agreed delinquency adjudication is unlawful, along with any claim premised on the agreement's illegality, cannot be

raised on direct appeal. Such claims must first be brought in the juvenile court in a post-judgment motion under Rule 60. Moreover, in the interest of judicial economy, if a juvenile's direct appeal includes **any** claim subject to our extended *Tumulty* rule, the entire appeal shall be dismissed without prejudice so the so-called "*Tumulty* claims" can receive a full airing in the juvenile court. Only after the juvenile court has resolved the *Tumulty* claims in a post-judgment proceeding can the juvenile proceed on appeal with **all** his claims.

The virtue of our rule is its simplicity and ease of application. It guarantees juveniles an avenue for challenging the legality of an adjudication agreement. It allows the juvenile court the first opportunity to correct errors expeditiously where appropriate. And it enables juveniles to develop an adequate factual record where necessary. We acknowledge that our rule's virtue—its simplicity and ease of application—may also be its vice. Its one-size-fits-all approach may be overinclusive, as J.W. argues here, in that its sweeping scope may include claims for which the factual record is already sufficiently developed. But we conclude the rule's likely benefits in simplicity and overall judicial economy outweigh its costs.

## D. Juveniles retain the right to counsel to seek post-judgment relief challenging an agreed delinquency adjudication.

Finally, a juvenile who challenges the validity of his consent judgment through a post-judgment motion is entitled to legal representation. Our legislature has codified the right to counsel in juvenile proceedings when a child is charged with a delinquent act, I.C. §§ 31-32-2-2(1), 31-32-4-1(1), and "in any other proceeding" at the court's discretion, *id*. § 31-32-4-2(b). We hold that the statutory right to counsel extends to the *Tumulty*-type post-judgment proceedings contemplated here under Trial Rule 60(B), in which a juvenile asserts one or more claims premised on the allegation that his consent judgment was obtained unlawfully.

# Conclusion

For these reasons, we grant transfer and hold that before J.W. may pursue an appeal, he must first seek relief from the trial court under Trial Rule 60(B). J.W.'s failure to follow this procedure means his appeal was premature. We thus dismiss the appeal without prejudice and remand to the trial court for further proceedings not inconsistent with this opinion. The time J.W. spent litigating this appeal shall not count against him for purposes of evaluating whether any forthcoming post-judgment motion is filed timely.

Rush, C.J., and David, Massa, and Goff, JJ., concur.

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana