

IN THE

# Court of Appeals of Indiana

J.J.,

*Appellant-Respondent*

v.

State of Indiana,

*Appellee-Petitioner*



FILED

Jul 30 2025, 9:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

July 30, 2025

Court of Appeals Case No.
25A-JV-481

Appeal from the Jennings Circuit Court

The Honorable Murielle S. Bright, Judge
The Honorable Christopher L. Doran, Magistrate

Trial Court Cause No.
40C01-2403-JD-6

---

**Opinion by Judge Kenworthy**
Judges Foley and Scheele concur.

**Kenworthy, Judge.**

## Case Summary

While serving an agreed term of "zero tolerance" probation during a suspended commitment to the Indiana Department of Correction ("DOC"), J.J. committed another delinquent act. J.J. and the State agreed he would admit the violation and be committed to the DOC. The trial court accepted J.J.'s admission, revoked his probation, and ordered him committed to the DOC for housing at the Logansport Juvenile Correctional Facility. J.J. argues the trial court abused its discretion by accepting his admission and imposing the agreed disposition. We dismiss without prejudice.

## Facts and Procedural History

In early 2024, J.J. was on home detention through Jennings County and living at Open Door Youth Services in Floyd County.[1] In March, the State filed a petition alleging J.J. was a delinquent child for committing what would be Level 6 escape if committed by an adult. In April, the trial court accepted an agreed disposition for J.J. to be committed to the DOC. The commitment was

---

[1] J.J. is a dual status child. *See* Ind. Code § 31-41-1-2 (defining a "dual status child" as, among other things, "a child who is alleged to be or is presently adjudicated to be a child in need of services . . . and is alleged to be or is presently adjudicated to be a delinquent child"). He had been adjudicated a child in need of services and was under the wardship of the Department of Child Services during these proceedings.

suspended and J.J. was placed on one year of juvenile probation. *See Tr. Vol. 2* at 7.[2]

[3] In May, the State filed a petition to modify J.J.'s probation alleging J.J. ran away from his placement at Open Door and was arrested for illegal consumption of alcohol. At the modification hearing, the trial court accepted the parties' agreement for J.J. to remain in his current placement and continue on probation under "zero tolerance" terms. *See id.* at 10. In July, the trial court approved J.J.'s change of placement to the Youth Opportunity Center ("YOC") in Delaware County.

[4] In January 2025, the State filed a notice of probation violation, alleging J.J. battered another YOC resident and failed to cooperate with staff. At the detention hearing, the State reported to the trial court that "we have an agreement" for J.J. "to make an admission and . . . be committed to the [DOC] next week." *Id.* at 15. A probation officer, J.J.'s counsel, and J.J. himself all stated that was their understanding of the agreement. Under questioning from the trial court, J.J. confirmed that admitting the violation was his "own free choice and decision." *Id.* at 16. J.J. also confirmed that he understood he was entitled to a factfinding hearing on whether he violated his probation but there would be no hearing because of the agreement. J.J. then admitted his "negative

---

[2] Another pending case was dismissed as part of this agreement.

behaviors" had caused his placement at YOC to fail. *Id.* at 17. The trial court found J.J. had violated his probation and ordered him to report to the DOC.

## J.J. cannot challenge alleged errors in the agreed modification of his disposition on direct appeal.

J.J. argues the trial court abused its discretion and denied him due process when it modified his disposition and sent him to the DOC. J.J. does not dispute that he agreed to the modified disposition, but he argues the zero tolerance terms of his probation left him with the impression "that he had no opportunity to explain his actions, or to offer mitigating evidence on his behalf, or to request an alternative residential placement option." *Appellant's Br.* at 11–12. The State counters J.J. is precluded from challenging the validity of the agreed modification on direct appeal. We agree with the State.

Our Supreme Court has held that an adult criminal defendant may not challenge the validity of a guilty plea on direct appeal but must instead raise any claims about his plea through post-conviction relief proceedings. *Tumulty v. State*, 666 N.E.2d 394, 395–96 (Ind. 1996) (based on the need for factual development of claims, the interest in finality of judgments, and the parties' freedom to settle their disputes). The Court then extended the *Tumulty* rule to agreed juvenile delinquency adjudications—the equivalent of guilty pleas— noting the "same concerns of finality and freedom of the parties to settle their disputes" apply in juvenile-delinquency proceedings. *J.W. v. State*, 113 N.E.3d 1202, 1206 (Ind. 2019). Accordingly, an agreed adjudication "limits the juvenile's ability to challenge the agreed judgment on direct appeal" just as a

guilty plea limits an adult defendant. *Id.* at 1206–07. But because post-conviction relief applies only to adult criminal convictions, the Court determined Trial Rule 60(B) is the "appropriate avenue" for a juvenile to assert "any and all claims premised on the illegality of an agreed delinquency adjudication." *Id.* at 1207–08.

[7] After *Tumulty* and *J.W.* were decided, a panel of our Court considered a direct appeal from an adult probationer who admitted he violated the terms of his probation in the trial court but asserted on appeal he did not knowingly, intelligently, and voluntarily waive his right to revocation counsel. *Kirkland v. State*, 176 N.E.3d 986, 988 (Ind. Ct. App. 2021), *trans. not sought*. The State argued a direct appeal was not the appropriate means for such a challenge. Seeing no reason why the interests underlying *Tumulty* and *J.W.* "are not equally applicable to cases involving admissions to probation violations," the panel held an adult probationer who admits to a violation must also first seek post-conviction relief to challenge revocation of his probation. *Id.* at 989.

[8] *J.W.* established a "bright-line rule" that a juvenile's claim that his agreed delinquency adjudication is unlawful or that the agreement is illegal "cannot be raised on direct appeal." 113 N.E.3d at 1208. *J.W.* was decided in the context of an original delinquency adjudication, and here, we have an agreed modification proceeding. But like the panel in *Kirkland* did with adult criminal proceedings, we recognize the similar interests involved in original juvenile delinquency proceedings and modification proceedings warrant applying *J.W.*'s bright-line rule here. J.J.'s appellate arguments are more appropriately brought

through a Trial Rule 60(B) motion for relief from judgment. We therefore dismiss his appeal without prejudice so he may pursue a motion for relief from judgment in the trial court. *See id.* (dismissing appeal without prejudice as it was premature).

## Conclusion

[9] For the foregoing reasons, we dismiss J.J.'s appeal without prejudice.

[10] Dismissed.

Foley, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Benjamin Loheide
Law Office of Benjamin Loheide
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Rebekah D. Bennett
Deputy Attorney General
Indianapolis, Indiana