

FILED

Apr 19 2023, 3:33 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 22S-JV-251

## M.H.,

*Appellant (Respondent below)*

—v—

## State of Indiana,

*Appellee (Petitioner below).*

Argued: September 22, 2022 | Decided: April 19, 2023

Appeal from the Elkhart Circuit Court,
No. 20C01-1906-JD-169
The Honorable Michael A. Christofeno, Judge
The Honorable Elizabeth A. Bellin, Magistrate

On Petition to Transfer from the Indiana Court of Appeals,
No. 21A-JV-2326

**Opinion by Justice Goff**

Chief Justice Rush concurs.

Justice Molter concurs with separate opinion.

Justice Slaughter concurs in the judgment with separate opinion in which
Justice Massa joins.

**Goff, Justice.**

Before 2021, our Juvenile Code defined a "delinquent act" only as an act committed by a child "that would be an offense if committed by an adult."[1] In *K.C.G. v. State*, decided in 2020, this Court held that, because the dangerous-possession-of-a-firearm statute expressly applied "only to children," the offense could never be "committed by an adult."[2] Thus, we concluded, the juvenile court lacked subject-matter jurisdiction to adjudicate the juvenile for violating the statute.[3]

Today, we're asked to decide, as an issue of first impression, whether the jurisdictional rule we announced in *K.C.G.* may apply retroactively to collaterally attack a final delinquency adjudication as void. Because the rule in *K.C.G.* does not affect the reliability or fairness of juvenile proceedings, policies of finality and efficient administration of justice compel us to hold that our decision in that case does not apply retroactively. We thus affirm the juvenile court's decision to deny the appellant's requested relief under Trial Rule 60(B)(6).

## Facts and Procedural History

In June 2019, police arrested 14-year-old Martin (a pseudonym) for trespassing, leading to the discovery of a loaded handgun on Martin's person. In its delinquency petition, the State alleged, among other things, that Martin violated Indiana Code section 35-47-10-5 (the **Dangerous-Possession Statute**),[4] which criminalizes, as a class-A misdemeanor, the knowing, intentional, or reckless possession of a firearm by a "child" without a lawful purpose. Ind. Code § 35-47-10-5(a) (2019). The following month, Martin admitted to the offense and the juvenile court adjudicated

---

[1] Ind. Code § 31-37-1-2 (2020).

[2] 156 N.E.3d 1281, 1283 (Ind. 2020) (citing I.C. § 35-47-10-5(a)).

[3] *Id.* at 1285.

[4] The State also alleged acts which, if committed by an adult, would be class-A misdemeanor resisting law enforcement and class-B misdemeanor railroad trespass.

him delinquent. Martin filed no notice of appeal, rendering judgment final thirty days later. *See* Ind. Appellate Rules 2(H)(1), 9(A)(1).

In November 2020, this Court issued its decision in *K.C.G. v. State*, holding that, because the Dangerous-Possession Statute, by its plain terms, "applies only to children," the State's delinquency petition necessarily failed to "allege a jurisdictional prerequisite—that K.C.G.'s conduct was 'an act that would be an offense if committed by an adult.'" 156 N.E.3d 1281, 1283, 1285 (Ind. 2020) (quoting I.C. § 31-37-1-2 (1997)). Thus, the Court concluded, the juvenile court lacked subject-matter jurisdiction to adjudicate the offense. *Id.* at 1285.

Relying on *K.C.G.*, Martin filed a Trial Rule 60(B)(6) motion for relief from judgment in August 2021, arguing that the juvenile court lacked subject-matter jurisdiction to adjudicate him delinquent under the Dangerous-Possession Statute, rendering its judgment void. App. Vol. 2, p. 36. The juvenile court found the 60(B)(6) motion "proper" but ultimately denied the requested relief.[5] *Id.* at 39, 40. In support of its ruling, the court relied on an amendment to Indiana Code section 31-37-1-2, effective April 2021, enlarging the definition of a "delinquent act" to include an act "in violation of" the Dangerous-Possession Statute. *Id.* at 40. *See* Pub. L. No. 84-2021, § 1, 2021 Ind. Acts 858, 858 (codified at I.C. § 31-37-1-2(3) (2021)).

In a published opinion, the Court of Appeals reversed, holding that, under "the law in effect at the time of [Martin's] act, as interpreted by [the] Supreme Court in *K.C.G.*," the juvenile court lacked subject-matter jurisdiction to adjudicate Martin delinquent under the Dangerous-Possession Statute, effectively voiding the court's judgment. *M.H. v. State*, 186 N.E.3d 1145, 1146–47 (Ind. Ct. App. 2022). Citing the lack of "conflicting precedent from the Indiana Supreme Court on the issue," the

---

[5] Because post-conviction proceedings apply only to adults, Trial Rule 60(B) is the proper procedural mechanism for juveniles to challenge the validity of an adverse judgment on collateral review. *J.W. v. State*, 113 N.E.3d 1202, 1207–08 (Ind. 2019) (holding "that Trial Rule 60 is an appropriate avenue through which a juvenile must raise any and all claims premised on the illegality of an agreed delinquency adjudication").

panel rejected the State's argument "that *K.C.G.* broke with precedent and declared a new rule that should not be applied retroactively." *Id.* at 1150–51. Finally, because the Amendment was "penal" in nature, rather than "remedial," the panel held that, absent express statutory language to the contrary, retroactive application of the Amendment would violate the constitutional bar against *ex post facto* laws. *Id.* at 1150.

We granted the State's petition for transfer, vacating the Court of Appeals opinion. *See* Ind. Appellate Rule 58(A).

## Standards of Review

When a party moves to set aside a judgment under Rule 60(B)(6), the trial court lacks discretion because its judgment is either void or valid, prompting a de novo standard of review on appeal. *K.S. v. R.S.*, 669 N.E.2d 399, 404 n.9 (Ind. 1996). *See also Hair v. Deutsche Bank Nat'l Trust Co.*, 18 N.E.3d 1019, 1022 (Ind. Ct. App. 2014) (a de novo standard of review applies to rulings on a Rule 60(B) motion that present only questions of law). When the facts aren't in dispute, subject-matter jurisdiction is a pure question of law we likewise review under a de novo standard. *D.P. v. State*, 151 N.E.3d 1210, 1213 (Ind. 2020).

## Discussion and Decision

The State contends that our decision in *K.C.G.* does not apply retroactively to Martin's delinquency adjudication. In support of its argument, the State relies on the analytical framework announced by the United States Supreme Court in *Teague v. Lane*—a framework expressly adopted by this Court in *Daniels v. State*, 561 N.E.2d 487, 489 (Ind. 1990).[6]

---

[6] The State also argues that, even if *K.C.G.* were to apply retroactively, the amendment to Indiana Code section 31-37-1-2 "was a remedial clarification that also applies retroactively," vesting subject-matter jurisdiction in the juvenile court "at the time the adjudication occurred." Appellee's Br. at 13–14. Because we find dispositive the issue of *K.C.G.*'s retroactive application, we need not address the State's alternative argument.

Pet. to Trans. at 8 (citing 489 U.S. 288 (1989)). Martin rejects the State's theory, insisting instead that the juvenile court never had subject-matter jurisdiction to begin with, rendering its judgment void *ab initio*. Br. in Opp. to Trans. at 4–5.

We agree with the State on the need for retroactivity analysis. Martin's position rests on an obsolete theory that views our decision in *K.C.G.* "not [as] new law but [as] an application of what is, and theretofore had been, the true law." *See Linkletter v. Walker*, 381 U.S. 618, 623 (1965) (internal citation and quotation marks omitted). To be sure, when a trial court lacks jurisdiction, we often speak of its actions as "void ab initio," *i.e.*, void from the very beginning. *Troxel v. Troxel*, 737 N.E.2d 745, 749 (Ind. 2000). But because of a final judgment's "*de facto* existence," and because of the parties' "reliance upon its validity," a new rule declaring that judgment void "has practical consequences which cannot be justly ignored." *Martin v. Ben Davis Conservancy Dist.*, 238 Ind. 502, 510, 153 N.E.2d 125, 129 (1958). And, so, our modern jurisprudence, absent extenuating circumstances, views a trial court's final judgment as "as an existing juridical fact until overruled, and intermediate cases finally decided under it are not to be disturbed." *Linkletter*, 381 U.S. at 624. This approach to the law is no less true when a party seeks to vindicate his claim through the procedural mechanism of Trial Rule 60(B)—a rule, we've emphasized, that "respects the presumptive finality" of a trial court's judgment. *J.W. v. State*, 113 N.E.3d 1202, 1206 (Ind. 2019).

# I. Our modern jurisprudence presumes non-retroactivity with certain limited exceptions.

When "defining the limits of adherence to precedent," this Court, like the United States Supreme Court, has long exercised discretion in applying "the principle of forward operation" or "that of relation backward." *See Great N. Ry. Co. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 364 (1932). The methods and policies we've relied on to exercise that discretion, and the types of collateral proceedings in which we've considered the retroactive effect of a legal decision, provide a starting point for resolution of the issue here.

## A. Policies of finality and efficient administration of justice generally warrant non-retroactivity in the post-conviction context.

In *Enlow v. State*, this Court considered whether to retroactively apply the rule announced in *Lawrence v. State*, which mandated bifurcated proceedings for habitual-offender charges. 261 Ind. 348, 350, 303 N.E.2d 658, 659 (1973) (citing 259 Ind. 306, 286 N.E.2d 830 (1972)). Drawing on federal precedent, the *Enlow* Court identified "three considerations" to resolve the issue: (1) the purpose of the new rule, (2) the extent of reliance by law enforcement on the old rule, and (3) the rule's effect on the administration of justice. *Id.* at 350–51, 303 N.E.2d at 659 (citing *Stovall v. Denno*, 388 U.S. 293 (1967)). The Court considered the first of these three factors the "most important and compelling," especially when the new rule aims "to correct serious flaws in the fact finding process at trial" and, thus, enhance the reliability of convictions. *Id.* at 351, 303 N.E.2d at 659. In those circumstances, the Court opined, the new rule warrants retroactive effect "regardless of good-faith reliance by law enforcement authorities or the degree of impact on the administration of justice." *Id.* (internal citation omitted). Because the procedural method used before *Lawrence* was "constitutionally inadequate to assure that the defendant" in a habitual-offender proceeding "would be afforded a fair determination of his guilt or innocence on the princip[al] charge," and because the holding in *Lawrence* sought to correct that "serious deficiency," the *Enlow* Court applied that decision retroactively to all cases pending on direct appeal at the time *Lawrence* was decided. *Id.* at 352, 303 N.E.2d at 660.

While the *Enlow* Court declined to give complete retroactive effect to a new rule of criminal procedure, subsequent decisions imposed no such limitation. In *Rowley v. State*, for example, this Court held that its earlier decision in *Strong v. State*—that evidence derived from a hypnotically entranced witness was inadmissible due to its inherent unreliability—applied retroactively to the petitioner's post-conviction claim. 483 N.E.2d 1078, 1081–83 (Ind. 1985) (citing 435 N.E.2d 969 (Ind. 1982)). To hold otherwise, the Court reasoned, would "substantially" impair a criminal trial's "truth-finding function," thus raising "serious questions about the

accuracy of guilty verdicts" rendered final. *Id.* at 1082 (citations and quotation marks omitted).

Five years after *Rowley*, this Court, in *Daniels v. State*, reevaluated its framework for retroactivity analysis following changes in the federal legal landscape. 561 N.E.2d at 489. The defendant in that case stood convicted of felony murder, for which the jury recommended—and the trial court ordered—the death penalty. *Id.* at 487. After this Court affirmed his conviction on direct appeal, the defendant sought post-conviction relief, arguing, among other things, that the prosecutor's closing statements at trial improperly and prejudicially focused on the victim's personal life. *Daniels v. State*, 528 N.E.2d 775, 782 (Ind. 1988), *cert. granted, judgment vacated*, 491 U.S. 902 (1989). After the post-conviction court denied relief and this Court affirmed, the United States Supreme Court granted certiorari, remanding to us for reconsideration under its recent decision in *South Carolina v. Gathers*, 490 U.S. 805 (1989). *Daniels*, 561 N.E.2d at 487. The rule in *Gathers* prohibited a death-penalty-sentencing jury from considering victim-impact information "about which the defendant was unaware," that was "irrelevant to the decision to kill," and that potentially compromised the reasoned decision-making necessary in a capital case. *Id.* at 488 (quoting 490 U.S. at 811).[7]

As a threshold issue on remand, the *Daniels* Court considered whether the *Gathers* rule applied retroactively to the defendant's collateral proceeding. *Id.* In analyzing this issue, the Court elected to follow *Teague*, citing the similarity in objectives between the remedy of post-conviction relief in Indiana and the federal writ of habeus corpus. *Id.* at 489. Under *Teague*'s analytical framework, "new rules of criminal procedure" generally "do not apply retroactively to cases that became final before the new rule was announced." *State v. Mohler*, 694 N.E.2d 1129, 1133 (Ind.

---

[7] *Gathers* has since been overruled by the United States Supreme Court. *See Payne v. Tennessee*, 501 U.S. 808 (1991).

1998) (articulating the "principle [that] *Daniels* extracted from *Teague*").[8] Exceptions apply (1) to substantive rules and (2) to procedural rules that "implicate the fundamental fairness of criminal proceedings and are central to an accurate determination of innocence or guilt."[9] *Id.* (internal citation and quotation marks omitted). Applying this framework, the *Daniels* Court rejected the retroactive application of *Gathers*, reasoning that its exclusion presented no serious threat to "the likelihood of an accurate death penalty determination" under Indiana's capital-sentencing scheme. 561 N.E.2d at 490.

By adopting *Teague*, our decision in *Daniels* marked a shift in the framework we use for analyzing the retroactive effect—if any—of a legal decision. *Id.* at 489. Rather than balancing several factors, a presumption of non-retroactivity applies. And while recognizing certain limited exceptions, our modern jurisprudence elevates "finality and efficient administration of justice" as the primary "rationale for nonretroactivity." *Mohler*, 694 N.E.2d at 1137. *See also Gutermuth v. State*, 868 N.E.2d 427, 434 (Ind. 2007) (recognizing the "importance of finality without sacrificing fairness").

---

[8] By contrast, for cases pending on direct appeal at the time a new rule is announced, the rule "should be given retroactive application," so long as "an adequate objection was lodged at trial." *Daniels*, 561 N.E.2d at 488.

[9] *Teague* referred to this second exception as encompassing "watershed rules of criminal procedure" designed to ensure a "fundamentally fair" trial. 489 U.S. at 311 (internal citation omitted). The U.S. Supreme Court has since characterized this exception as "moribund" and "retaining no vitality." *Edwards v. Vannoy*, 141 S.Ct. 1547, 1560 (2021) (internal citation and quotation marks omitted). Because we ultimately depart from federal precedent in resolving the retroactivity question here, we need not decide whether to follow the Supreme Court's repudiation of the procedural exception. *See Mohler*, 694 N.E.2d at 1132 (emphasizing that "[s]tate courts hearing claims for collateral review" may "set their own retroactivity rules independent of *Teague*").

## B. The same policy concerns apply to collateral attacks in the juvenile realm.

Because our modern retroactivity analysis implicates "new rules of **criminal** procedure," *Mohler*, 694 N.E.2d at 1133 (emphasis added), our appellate courts have traditionally applied *Teague* to claims raised either on direct appeal or in post-conviction proceedings. This case, of course, involves a collateral attack on a juvenile-delinquency proceeding, which Indiana courts deem civil or "quasi-criminal" in nature. *A.S. v. State*, 929 N.E.2d 881, 891 (Ind. Ct. App. 2010). While "parallels exist between Indiana's criminal and juvenile systems," we've long recognized "significant differences separating the two." *A.M. v. State*, 134 N.E.3d 361, 366 (Ind. 2019). Juveniles "generally enjoy the same constitutional guarantees against governmental deprivation as adults," but the *parens patriae* doctrine permits the state to "adjust its legal system to account for children's vulnerability and their needs for concern, sympathy, and paternal attention." *Id.* (cleaned up). Because of these differences, the standards to evaluate claims in one context may not apply in the same way to the other. *See, e.g.*, *id.* at 362–63 (holding that a modified due-process standard, rather than the *Strickland* standard, governs a juvenile's ineffective-assistance-of-counsel claim in a disposition-modification hearing).

While no Indiana cases have applied *Teague* to collateral attacks in the juvenile realm, we find sufficient reasons to view the retroactivity question in that context through the same lens we apply to post-conviction proceedings.

First, this Court **has** relied on *Teague* in analyzing whether a new civil/quasi-criminal rule applies retroactively. In *Mohler v. State*, for example, we held that our previous decision in *Bryant v. State*—that double jeopardy bars criminal prosecution for a drug offense after the state has imposed a controlled-substance excise tax (or CSET) for the same offense—did not apply retroactively. 694 N.E.2d at 1131, 1137 (citing 660 N.E.2d 290 (Ind. 1995)). While acknowledging that a CSET assessment imposed a "**civil** penalty," the Court in *Bryant* concluded that it amounted

to criminal punishment by creating a risk of guilt upon which jeopardy attaches. 660 N.E.2d at 297, 299 (emphasis added).

Second, and perhaps more important, the same underlying policy concerns that animate retroactivity analysis in the context of criminal post-conviction claims—finality and efficient administration of justice—apply equally to collateral attacks in the juvenile realm. *Compare Mohler*, 694 N.E.2d at 1137 (citing "finality and efficient administration of justice"), *with J.W.*, 113 N.E.3d at 1206 (concluding that the "same concerns of finality and freedom of the parties to settle their disputes" that mark the civil and criminal realms apply to the juvenile-delinquency context).

Having set the stage for our decision, we proceed to resolve the claims before us.

## II. Our *K.C.G.* decision does not apply retroactively.

To summarize, the analytical framework we adopted in *Daniels* applies a presumption of non-retroactivity while recognizing certain limited exceptions. And the same policy concerns that warrant this presumption in post-conviction proceedings—finality and efficient administration of justice—apply to collateral attacks in the juvenile realm. Our analysis here begins by deciding whether this case fits the limited exceptions to the general rule.

### A. Did *K.C.G.* create a new procedural rule?

As noted above "new rules of criminal procedure" generally "do not apply retroactively to cases that became final before the new rule was announced." *Mohler*, 694 N.E.2d at 1133. This framework requires us to decide whether the rule announced in *K.C.G.* was "new" and, if so, whether that rule was procedural.

### 1. *K.C.G.* created a new rule.

A case announces a "new" rule when it "breaks new ground," when it "imposes a new obligation" on the government, if its result "was not

dictated by precedent" at the time of the conviction, or if the result is "susceptible [of] debate among reasonable minds." *Id.* at 1132–33 (cleaned up).

Here, we have no doubt that our holding in *K.C.G.* marked a "clear break" from Court of Appeals precedent. *Cf. C.C. v. State*, 907 N.E.2d 556, 558–59 (Ind. Ct. App. 2009) (citing legislative intent to qualify an offense under the defective statute as a "delinquent act" over which juvenile courts held subject-matter jurisdiction). Contrary to the reasoning of the panel below, it matters not whether this Court had spoken on the issue. To conclude otherwise, as the State points out, undermines the precedential authority of decisions from our Court of Appeals. *Cf. Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003) (disapproving use of a jury instruction with a "substantial history of appellate approval" and applying the "new rule" only to those appellants "whose cases properly preserved the issue and whose cases are now pending on direct appeal"); App. Rule 57(H)(1) (identifying conflict in Court of Appeals decisions as one of several "principal considerations governing [this] Court's decision whether to grant transfer").

The authority of Court of Appeals precedent notwithstanding, *K.C.G.* expressly acknowledged the "prevailing law" at the time, the State's reliance on which, we added, was "not without force." 156 N.E.3d at 1283. At the very least, then, we recognized that the result we came to was "susceptible [of] debate among reasonable minds." *See Mohler*, 694 N.E.2d at 1132–33 (internal citation and quotation marks omitted). *Cf. Membres v. State*, 889 N.E.2d 265, 271 (Ind. 2008) (holding that *Litchfield v. State*, 824 N.E.2d 356 (Ind. 2005), created "a new rule" of criminal procedure because that rule "reshaped the understanding of what constitutes a reasonable warrantless trash search") (internal quotation marks omitted).

In sum, by breaking new ground and by recognizing the result it came to was susceptible of reasonable debate, our decision in *K.C.G.* clearly created a new rule. We must now decide whether that rule was substantive or procedural.

## 2. The new jurisdictional rule in *K.C.G.* is neither procedural nor substantive.

The principle of nonretroactivity generally "applies only to procedural rules." *Jacobs v. State*, 835 N.E.2d 485, 488 (Ind. 2005) (internal citation omitted). Substantive rules, on the other hand, **do** "generally apply retroactively to cases on collateral review." *Id.* "Whether a law is procedural or substantive is rarely straightforward." *Church v. State*, 189 N.E.3d 580, 598 (Ind. 2022) (Goff, J., concurring in part and in the judgment). There are, however, certain qualities that help set them apart. Generally, a **procedural** rule "control[s] the means by which a court is to determine a defendant's guilt or innocence." *Jacobs*, 835 N.E.2d at 489. A **substantive** rule, on the other hand, "declares what conduct is criminal and prescribes the punishment to be imposed for such conduct." *Id.* (citing Wayne R. LaFave, *Substantive Criminal Law* § 1.2 (2d ed. 2003)).

The State argues that, because the result in *K.C.G.* "was that jurisdiction was *not* exclusively conferred on the juvenile court," our decision in that case merely required adjudication of a dangerous-possession offense in an adult criminal court, which "did have subject matter jurisdiction over these cases." Appellee's Br. at 24–25. And because it "affected only the *forum* in which guilt or innocence could be adjudicated," the State insists, our decision in "*K.C.G.* addressed 'a procedural matter, whether a trial could be brought at all, rather than a substantive matter.'" Pet. to Trans. at 13 (quoting *Jacobs*, 835 N.E.2d at 491). In support, the State relies on *United States v. Cuch*, 79 F.3d 987 (10th Cir. 1996).[10] In that case, the Tenth Circuit Court of Appeals held that the Supreme Court's decision in *Hagen v. Utah*, which recognized subject-matter jurisdiction over crimes committed on certain tribal lands as vesting in the state rather than the federal

---

[10] The State also cites *Matloff v. Wallace*, which relied heavily on *Cuch* to hold that that the Supreme Court decision in *McGirt v. Oklahoma* announced a new rule of criminal procedure that did **not** apply retroactively in a state post-conviction proceeding to void a final conviction. 497 P.3d 686, 688, 689 (Okla. Crim. App. 2021) (citing 140 S. Ct. 2452 (2020)).

government, was not retroactive to final convictions. *Id.* at 988 (citing 510 U.S. 399 (1994)).[11]

We agree with the State that *K.C.G.* created no new substantive rule. Indeed, nothing in *K.C.G.* altered "either the nature of the [offense] in question" or the legislature's ability to punish juveniles for dangerous possession of a handgun. *See Jacobs*, 835 N.E.2d at 490. To the contrary, our holding in *K.C.G.*—that the juvenile court lacked the requisite subject-matter jurisdiction to adjudicate the offense—rested on the "plain terms" of the Dangerous-Possession Statute. 156 N.E.3d at 1282. And any "judicial fix" to the statute's jurisdictional defect, we concluded, "would require that we expand [its] potential class of offenders to include adults with unauthorized firearms." *Id.* at 1284.

While we agree that *K.C.G.* created no new substantive rule, we reject the State's argument that our decision created a new procedural rule.

To begin with, the State's theory improperly conflates venue and jurisdiction. *See Green v. State*, 230 Ind. 400, 402, 103 N.E.2d 429, 430 (1952) (emphasizing that "jurisdiction is one thing and venue is another"). Jurisdiction (over the subject matter) refers to a court's "power to hear and determine cases of the general class to which any particular proceeding belongs." *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006). Venue, by contrast, does "not confer jurisdiction but rather prescribe[s] the location at which trial proceedings are to occur from among the courts empowered to exercise jurisdiction." *Benham v. State*, 637 N.E.2d 133, 137 (Ind. 1994).

Second, and more importantly, the State mischaracterizes our holding in *K.C.G.*. Our decision in that case focused not on whether the juvenile

---

[11] The *Cuch* panel, for its part, relied on precedent in which the Supreme Court had "limit[ed] the retroactive application of subject matter jurisdiction rulings." 79 F.3d at 990. *See, e.g.*, *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87–88 (1982) (applying prospectively its decision that the Bankruptcy Act of 1978 unconstitutionally vested Article I bankruptcy courts with the power to determine questions reserved to Article III courts); *Gosa v. Mayden*, 413 U.S. 665, 667–68, 685 (1973) (declining to retroactively apply its decision in *O'Callahan v. Parker*, in which the Court had held that armed-forces personnel were not subject to trial by court martial for nonservice offenses) (citing 395 U.S. 258 (1969)).

court exercised jurisdiction "exclusive" of or "concurrent" with the circuit courts, as the State contends. Appellee's Br. at 25 (citing I.C. § 33-28-1-2). To the contrary, we expressly held that, because a misdemeanor offense under the Dangerous-Possession Statute could never be "an act that would be an offense if committed by an adult," the "juvenile court **lacked** subject-matter jurisdiction" **completely**. 156 N.E.3d at 1285 (emphasis added). And because the Dangerous-Possession Statute "applies only to children," the circuit courts likewise lacked jurisdiction over the offense.[12] *See State v. Neukam*, 189 N.E.3d 152, 157 (Ind. 2022) (deciding that, because "criminal and delinquent acts are distinct classes of conduct determined by age, the circuit court does not have jurisdiction over the acts [a person] allegedly committed before turning eighteen").

In sum, while our decision in *K.C.G.* created a new rule, that rule—implicating a court's authority to hear and try a case—is neither procedural nor substantive. Where this conclusion leaves us is an issue we turn to next.

## B. The lack of clearly applicable precedent calls for a variation in our analytical framework.

In the years following our decision in *Daniels*, Indiana appellate courts have relied on *Teague* to decide whether a case warrants the retroactive

---

[12] The primary pre-*K.C.G.* Court of Appeals case on which the State relies here acknowledges this, pointing out that, under the appellant's theory, his violation of the Dangerous-Possession Statute "would not fall within the jurisdiction of either the juvenile court or the adult criminal court and thus would go unpunished." *C.C.*, 907 N.E.2d at 559.

application of new sentencing rules,[13] new rules of evidence,[14] and new rules of procedure.[15] With no modern Indiana case having considered the retroactive effect of a new jurisdictional rule, we're left with an issue of first impression: Can a party invoke such a rule to collaterally attack a final delinquency adjudication as "void"?

Our Trial Rule 60(B) jurisprudence offers some insight. Indiana courts have long held that the rule precludes collateral attack "solely because a subsequent decision of an appellate court in an unrelated case declared the law to be contrary to that applied by the trial court in the party's case." *Sheraton Corp. of Am. v. Korte Paper Co.*, 173 Ind. App. 407, 408, 363 N.E.2d 1263, 1264 (1977). *See also Chapin v. Hulse*, 599 N.E.2d 217, 220 (Ind. Ct. App. 1992) (emphasizing that nothing in Trial Rule 60(B) "contemplates a subsequent change in law as grounds for relief"). But these decisions are limited to the application of subsections 60(B)(2), (7), and (8)—none of which implicate **void** judgments. *See Sheraton Corp.*, 173 Ind. App. at 409, 363 N.E.2d at 1264.

We find some support from a mid-twentieth-century case in which a party challenged the trial court's final judgment (from which no one had appealed) on grounds that a subsequent decision—holding that the applicable jurisdiction-conferring statute was unconstitutional—rendered the trial court's judgment void. *Martin*, 238 Ind. at 508–09, 153 N.E.2d at 128. This Court disagreed, holding that, when "a court of competent

---

[13] *See Gutermuth v. State*, 868 N.E.2d 427, 435 (Ind. 2007) (holding that the Supreme Court decision in *Blakely v. Washington* is not retroactive to belated appeals under Post–Conviction Rule 2 because such appeals are neither "pending on direct review" nor "not yet final").

[14] *Pirnat v. State*, 607 N.E.2d 973, 974 (Ind. 1993) (emphasizing that the new rule in *Lannan v. State*—that Federal Rule of Evidence 404(b), rather than the "depraved sexual instinct exception," applies when deciding the admissibility of evidence of prior sexual misconduct—applied only to the defendant "and others whose cases properly preserved the issue and whose cases were pending on direct appeal at the time *Lannan* was decided") (citing 600 N.E.2d 1334 (Ind. 1992)).

[15] *See, e.g., Brown v. State*, 587 N.E.2d 693, 695, 698 (Ind. Ct. App. 1992) (holding that the rule announced in *Smith v. State*—that failure to instruct the jury on the element of specific intent when a defendant is charged with attempted murder amounts to fundamental error—applies retroactively on post-conviction review) (citing 459 N.E.2d 355, 357–58 (Ind. 1984)).

jurisdiction, before the statute has been declared unconstitutional, renders a judgment based upon the statute from which" no party appeals, that "judgment is binding upon the parties thereto" and "cannot be attacked collaterally." *Id.* at 509, 153 N.E.2d at 128 (citing *State v. Arkansas Const. Co.*, 201 Ind. 259, 167 N.E. 526 (1929)). While premising its decision on principles of finality, the Court recognized that other "classes of cases" may warrant a different outcome—an outcome based on the parties' reliance interests, "rights claimed to have become vested," and considerations of "public policy." *Id* at 510–11, 153 N.E.2d at 129 (quoting *Chicot Co. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374 (1940)). For this reason, the Court declined to adopt "an all-inclusive statement of a principle of absolute retroactive invalidity," choosing instead to "confine [its] consideration" of the issue to the circumstances before it. *Id.* at 511, 153 N.E.2d at 129 (quoting *Chicot Co. Drainage Dist.*, 308 U.S. at 374).

The *Martin* decision is certainly relevant to the issue we're faced with today, but the Court's lack of a clear standard for analyzing the retroactivity question gives us little guidance on which to proceed.[16]

In the absence of clearly applicable precedent, we opt for charting a new path to resolve the issue before us. "State courts hearing claims for collateral review" may, after all, "set their own retroactivity rules independent of *Teague*." *Mohler*, 694 N.E.2d at 1132. In *Membres*, for

---

[16] Justice Slaughter, concurring in the judgment, relies on *State v. Arkansas Construction Company*, a pre-*Martin* case involving a substantially similar issue—whether a final judgment is rendered void by a subsequent decision holding the applicable jurisdiction-conferring statute unconstitutional. 201 Ind. 259, 167 N.E. 526 (1929). While the two cases reached the same result, the *Arkansas Construction* Court, unlike the Court in *Martin*, recognized no possible exception to the rule that, when a "statute conferring jurisdiction is held unconstitutional, such decision will have no retroactive effect" on a final judgment. *Id.* at 263, 167 N.E. at 527 (internal citation omitted). By declining to adopt "an all-inclusive statement of a principle of absolute retroactive invalidity," the *Martin* decision, in our view, superseded *Arkansas Construction*. What's more, the *Arkansas Construction* decision is **not** necessarily "consistent with case law from the Supreme Court." *See post*, at 2 (Slaughter, J., concurring in the judgment). *Cf. Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981) (concluding that a "court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, **a jurisdictional ruling may never be made prospective only**") (emphasis added).

example, we departed from precedent in holding that the new rule announced in *Litchfield v. State* did not apply retroactively to cases pending on direct review.[17] 889 N.E.2d at 271, 272. *Teague* and *Daniels*, we acknowledged, generally required the retroactive application of new rules to cases "not yet final." *Id.* at 271, 273. But the rule announced in *Litchfield*, we concluded, was "qualitatively different" from the new rules considered in those cases. *Id.* at 273. In reaching this conclusion, we distinguished two types of new rules: (1) those that "go to the fairness of the trial itself and are designed to eliminate a previously existing danger of convicting the innocent" and (2) those that "enforce other constitutional rights not necessarily connected with the fact finding function." *Id.* at 272 (quoting *Enlow*, 261 Ind. at 351, 303 N.E.2d at 660) (brackets omitted). The former types require retroactive application whereas the latter do not. *Id.* Within this framework, we concluded, the rule announced in *Litchfield*—designed to "deter random intrusions into the privacy of all citizens" rather than to exclude unlawfully seized evidence due to its potential for prejudice—fell into the second category, thus precluding the need for retroactive application. *Id.* at 272, 274.

Like the new rule announced in *Litchfield*, the new rule we announced in *K.C.G.* is "qualitatively different" from the new rule we considered in *Daniels*. Indeed, the new jurisdictional rule announced in *K.C.G.* "speaks to the power of the court rather than to the rights or obligations of the parties," *see In re Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014) (cleaned up), or to any "previously existing danger of convicting the innocent," *see Membres*, 889 N.E.2d at 272.

Because the jurisdictional rule at issue here doesn't quite fit the *Teague* analysis, we offer a modified rule to guide us in similar cases going forward: When a decision implicates a new jurisdictional rule, as in *K.C.G.*, we apply the principle of non-retroactivity, rather than vacate a

---

[17] In relevant part, *Litchfield* held that, for a warrantless trash search to be reasonable, police (1) must retrieve the trash "in substantially the same manner as the trash collector would take it" and (2) must possess an "articulable individualized suspicion" that the subject of the search was engaged in illegal activity. 824 N.E.2d 356, 363–64 (Ind. 2005).

final judgment for voidness, unless the jurisdictional error compromised the reliability or fairness of the proceedings. This approach, we believe, aligns with the policy concerns that have long informed our retroactivity analysis of cases on collateral review—finality and efficient administration of justice. *See Daniels*, 561 N.E.2d at 489; *Mohler*, 694 N.E.2d at 1132.

Whether these concerns call for retroactive application of *K.C.G.* is a question we turn to next.

## C. Policies of finality and efficient administration of justice compel us to restrict the retroactive effect of *K.C.G.*'s new jurisdictional rule.

As the Supreme Court emphasized in *Teague*, principles of finality and fundamental fairness are "essential to the operation of our criminal justice system." 489 U.S. at 309, 311. Inherent in these tenets is the judicial policy of efficient administration of justice, for "once a new rule is applied to the defendant in the case announcing the rule," fairness "requires that it be applied retroactively to all who are similarly situated." *Id.* at 300.

These principles and policies compel us to **restrict** the retroactive effect of *K.C.G.*'s new jurisdictional rule.

To begin with, the interests of finality are strong. This is especially true in the juvenile context, with its emphasis on rehabilitation. *See Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 513 (1982). To relitigate the dangerous-possession offense would only prolong the uncertainty of final adjudication, interrupt the necessary services, and ultimately delay the rehabilitative process. As the Supreme Court has observed, there is "little that can be as detrimental to a child's sound development as uncertainty." *Id.*

Retroactive application of *K.C.G.* would also open to collateral attack virtually all adjudications under the Dangerous-Possession Statute, creating a potential threat to public safety, undermining the good-faith efforts of law enforcement, and visiting hardship on victims and witnesses

who justifiably relied on the original judgments.[18] The State, of course, could still refile delinquency allegations. *See B.D.T. v. State*, 738 N.E.2d 1066, 1068 (Ind. Ct. App. 2000) (reaching this conclusion because "jeopardy does not attach to a judgment void for lack of jurisdiction"). But in addition to the enormous cost that would impose on the state, many of those adjudicated delinquent—for dangerous possession along with any number of other offenses, both violent and nonviolent—have likely aged out of the juvenile system, effectively preventing further prosecution. *See D.P. v. State*, 151 N.E.3d 1210 (Ind. 2020) (holding that juvenile courts lack jurisdiction over delinquency petitions once the accused turns twenty-one). And even if it were possible to refile delinquency petitions, other factors—the passage of time, the fading of memories, and the potential loss of evidence—may render adjudication a practical impossibility.

In contrast to these weighty factors, Martin's interests in post-adjudication relief are minimal. He raises no claim that the juvenile court's lack of subject matter-jurisdiction undermined the accuracy of his adjudication or otherwise compromised the fairness of the proceedings. Indeed, despite the court's latent violation of the juvenile jurisdiction statute, the record reveals no diminution in the procedural protections Martin enjoyed at his delinquency proceedings. In reaching its decision, the juvenile court considered several factors: the statements and recommendations of the parties involved, the pre-dispositional report, the results of an IYAS risk-assessment tool, the best interests of Martin and the community, various alternatives for his treatment and rehabilitation, his family's income and other assets, and his family's ability to participate in services. App. Vol. 2, p. 7. After the court advised him of his rights, Martin voluntarily admitted to the dangerous-possession allegation. *Id.* And, based on efforts by the probation department to prevent Martin's removal and placement in detention, the court ordered him to remain at home on electronic monitoring. *Id.* at 8, 11. While a reversal of his

---

[18] A cursory Westlaw search reveals appellate-court affirmance of approximately forty adjudications under the Dangerous-Possession Statute dating back to 1994 (the year Indiana adopted the legislation). And that figure, of course, fails to account for those adjudications that were never appealed—a figure that could reach into the hundreds if not thousands.

adjudication would certainly mark a victory for Martin, others would no doubt consider it a travesty of justice.

In short, the "interest in leaving concluded litigation in a state of repose" far outweighs "the competing interest in readjudicating" a delinquency ruling under a new jurisdictional rule that never called into question the basic fairness of the process. *See Teague*, 489 U.S. at 306 (internal citation and quotation marks omitted).

# Conclusion

Because our decision in *K.C.G.* does not affect the reliability or fairness of juvenile proceedings, policies of finality and efficient administration of justice compel us to hold that the new jurisdictional rule announced in that case does not apply retroactively in a collateral attack to render a final delinquency adjudication void. We thus affirm the juvenile court's decision to deny the appellant's requested relief under Trial Rule 60(B)(6).

Rush, C.J., concurs.
Molter, J., concurs with separate opinion.
Slaughter, J., concurs in the judgment with separate opinion in which Massa, J., joins.

ATTORNEY FOR APPELLANT
Mark D. Altenhof
Elkhart, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE,
PUBLIC DEFENDER OF INDIANA
Amy E. Karozos
Katherine Province
Mark S. Koselke
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE,
INDIANA PUBLIC DEFENDER COUNCIL
Bernice Corley
Indianapolis, Indiana

Joel C. Wieneke
Brooklyn, Indiana

**Molter, J., concurring.**

I join the Court's opinion, which holds that our decision in *K.C.G. v. State*, 156 N.E.3d 1281 (Ind. 2020), does not apply retroactively for a collateral attack on a final delinquency adjudication, and explains that concerns for finality and the efficient administration of justice generally compel applying jurisdictional rules prospectively unless a new decision calls into question the reliability or fairness of the prior proceedings. I write separately to note two points.

First, I read *State v. Arkansas Construction Company*, 201 Ind. 259, 167 N.E. 526 (1929), as supporting our holding today. In that case, we held that a decision declaring a jurisdictional statute unconstitutional did not have retroactive effect. *Id.* at 527. If our conclusion that our Constitution precludes jurisdiction is generally applied prospectively, then the same must be true for our conclusion that a statute precludes jurisdiction. We reaffirmed that holding in *Martin v. Ben Davis Conservancy District*, 238 Ind. 502, 509, 153 N.E.2d 125, 128 (1958).

Second, the Court's opinion explains how it is generally consistent with federal retroactivity principles. It is also consistent with federal caselaw in the more specific context of Rule 60(B) motions collaterally attacking judgments on jurisdictional grounds. M.H. raises his claim through Indiana Trial Rule 60(B)(6). The United States Court of Appeals for the Seventh Circuit has explained that Indiana Trial Rule 60(B)(6) tracks Rule 60(b)(4) of the Federal Rules of Civil Procedure, and both rules allow a court to relieve a party from a final judgment that is void. *In re Lodholtz*, 769 F.3d 531, 534 (7th Cir. 2014). But "the court that issued the judgment in excess of its jurisdiction had jurisdiction to determine jurisdiction, and its jurisdictional finding, even if erroneous, is therefore good against collateral attack, like any other erroneous but final judgment." *Id.* (quotations omitted). "Only when the jurisdictional error is 'egregious' will [federal] courts treat the judgment as void." *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000).

A leading treatise on the Federal Rules of Civil Procedure likewise explains:

> It must be noted, however, that a court has jurisdiction to determine its own jurisdiction. Thus, if [a] defendant has challenged the court's personal jurisdiction and this issue has been resolved against the defendant by a final judgment, that judgment is not void, but is binding on the issue of jurisdiction. By the same token, **a court's determination that it has jurisdiction of the subject matter is binding on that issue**, if the jurisdictional question actually was litigated and decided, or **if a party had an opportunity to contest subject-matter jurisdiction and failed to do so**.

11 Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 2862 (3d ed.) (emphasis added) (footnotes omitted).

Here, the prior court had jurisdiction to consider its own jurisdiction, and its jurisdictional error cannot be considered egregious because, as the Court's opinion explains, there was binding Court of Appeals precedent at the time concluding there was jurisdiction.

**Slaughter, J., concurring in the judgment.**

In *K.C.G. v. State*, 156 N.E.3d 1281 (Ind. 2020), we held that juvenile courts lack jurisdiction to adjudicate violations of the so-called dangerous-possession-of-a-firearm statute, see Ind. Code §§ 31-37-1-2, 35-47-10-5(a) (2020). Today, the Court holds that *K.C.G.*'s new jurisdictional rule does not apply retroactively and thus is unavailable to M.H., a juvenile, who sought relief under Trial Rule 60(B)(6) to void an adverse final judgment entered against him in 2019. Though I agree with the Court's disposition today, I reach that result for different reasons. The Court believes it needs to "chart[] a new path to resolve the issue before us." *Ante*, at 16. In contrast, I prefer our existing, long-trodden path—one that, in my view, is neither broken nor needs fixing but leads directly to today's result.

A noteworthy case on that path dating back nearly a hundred years is *State ex rel. Piel v. Arkansas Construction Co.*, 201 Ind. 259, 167 N.E. 526 (1929). *Arkansas* addressed whether a final, never-appealed judgment was void after a later case held that the statute conferring jurisdiction for that judgment was unconstitutional. We held no—that the prior judgment in *Arkansas* was not void but still binding—because such jurisdictional decisions are not retroactive: "Where a statute conferring jurisdiction is held unconstitutional, such decision will have no retroactive effect … and where proceedings have been regularly had under the law as it existed before such decision they will not be disturbed." *Id*. at 527 (quoting 15 C.J. *Courts* § 174 (1918)).

The Court today acknowledges *Arkansas* but believes it is not "clearly applicable precedent". *Ante*, at 16. I respectfully disagree. *Arkansas* does not merely support but compels the same result here—that our jurisdictional ruling in *K.C.G.* does not apply retroactively to void the final judgment in M.H.'s closed case. It is irrelevant that the jurisdictional question in *Arkansas* arose from how we interpreted the constitution, and the question today arises from how we interpreted a statute: "The common law, the statutes, and the constitutions make up the law of the land. They are all law. On principle it is not perceived why a mistake in constitutional law should be visited with more serious consequences than

a mistake in common or statutory law." *Koepke v. Hill*, 157 Ind. 172, 60 N.E. 1039, 1040 (1901).

This conclusion is consistent with case law from the Supreme Court and other federal courts. See, e.g., *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 88 (1982) (holding that jurisdictional rule for bankruptcy courts should not apply retroactively). As Judge Posner explained in *In re Edwards*, 962 F.2d 641 (7th Cir. 1992), a court that issued a judgment outside its jurisdiction still had jurisdiction to decide its own jurisdiction; and that jurisdictional determination, even if later shown to be wrong, survives collateral review like any other erroneous but final judgment. *Id*. at 644. Here, M.H. had the opportunity to challenge the juvenile court's jurisdiction but failed to do so. And binding appellate precedent at the time in Indiana held that the juvenile court had jurisdiction. See, e.g., *C.C. v. State*, 907 N.E.2d 556, 558 (Ind. Ct. App. 2009).

Our Court eventually arrives at the right result today, but it does so by applying the criminal-law retroactivity standard announced in *Teague v. Lane*, 489 U.S. 288 (1989), and adopted in *Daniels v. State*, 561 N.E.2d 487 (Ind. 1990), to this civil case. We have repeatedly held that juvenile cases are civil proceedings subject to civil procedures. See, e.g., *J.W. v. State*, 113 N.E.3d 1202, 1206 (Ind. 2019). Juvenile adjudications are not subject to post-conviction relief afforded for criminal convictions. *Jordan v. State*, 512 N.E.2d 407, 408 (Ind. 1987). And neither should post-judgment relief for juvenile adjudications be subject to the retroactivity rules that apply to collateral criminal proceedings. That is especially true when our longstanding civil retroactivity precedent already supplies a proper rule of decision here.

For these reasons, I do not join the Court's opinion, but I concur in its judgment not to apply *K.C.G.* retroactively to void the adverse judgment against M.H.

Massa, J., joins.